725 A.2d 1180 (1999)
WOODBURY HEIGHTS BOARD OF EDUCATION, Plaintiff-Respondent,
v.
Sarkis J. STARR, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 13, 1998.
Decided March 25, 1999.
*1182 Christopher C. Cona, Woodbury, for defendant-appellant.
Russell E. Paul, Woodbury, for plaintiff-respondent.
Before Judges HAVEY, SKILLMAN and LESEMANN.
*1181 The opinion of the court was delivered by LESEMANN, J.S.C. (temporarily assigned).
Defendant Sarkis J. Starr (Starr) appeals from a Law Division judgment against him and in favor of plaintiff Woodbury Heights Board of Education (the Board) for $18,570 representing tuition for three years' attendance by his grandson, James Seltzer (James), at a Woodbury Heights public school. The judgment was premised on the conclusion that during those three years, James and his mother, Carol Seltzer (Carol), lived in another municipality and thus James was not eligible to attend school in Woodbury Heights.
The issues on appeal can be simply stated: Was James domiciled in, or a resident of, Woodbury Heights during any or all of the school years 1992-93, 1993-94 or 1994-95 and, if not, was there a basis for imposing tuition liability against Starr for any of those years?
Starr lived at 108 Central Avenue, in Woodbury Heights, throughout the entire period in question. His daughter, Carol, was divorced from James's father and maintained an apartment in the Knightsbridge complex in the nearby town of Westville. She claimed that she spent only occasional nights there and that she and James basically resided with her father in Woodbury Heights.
Beginning with the 1992-93 year, when he was in the second grade, James attended school in Woodbury Heights, with his address listed as that of his grandfather at 108 Central Avenue. For the third grade, during the 1993-94 year, he did the same.
However, on September 2, 1994, as James began the 1994-95 school year in the fourth grade, the Woodbury Heights Superintendent of Schools, Mary H. Smith (Smith), wrote to Carol (addressing the letter to 108 Central Avenue, Woodbury Heights), advising that,
The Board of Education of the Woodbury Heights School District at their September 1, 1994 meeting has moved to deny admission to the elementary school to your child, James J. Seltzer. This denial is due to lack of appropriate, requested information as outlined in the correspondence sent to you dated July 15, 1994 and August 25, 1994.[1]
Smith said she was enclosing "a copy of P.L. 1993, which places the burden of proof of residency on the parent/guardian and outlines the parents/guardian's right of appeal." She followed that letter with another bearing the same date, also addressed to Carol, advising that the Board's attorney had advised that James
may attend school in Woodbury Heights for twenty-one days from the date of the Board of Education's decision to deny admission to the child that is, from September 21, 1994. This 21 day period ... affords you time to decide on an appeal to the Commissioner of Education.
On September 12, 1994, Starr wrote to the Commissioner of Education (the Commissioner), complaining of Smith's activities and maintaining that James was living with him in Woodbury Heights. Although the letter did not say in so many words that Starr was appealing the Board's decision, that is fairly *1183 inferrable from the letter and the Commissioner treated it as such an appeal. On September 19, 1994, apparently unaware of Starr's letter to the Commissioner, Smith wrote again to Carol, advising that "your child's last day in school at Woodbury Heights is Thursday, September 22." Her letter continued:
The Board of Education denied attendance to your child based on the absence of requested documentation to support your June 7, 1994 affidavit information. Documentation requested in letters dated July 15 and August 25 requested Driver's License, Voter Registration Card, various credit card billings, income tax documentation, car payment coupons, paychecks from employer, etc.
Please be reminded that the burden of proof of residency lies with the parent. Residency is defined in P.L.1993 as consistently "sleeping" in the place of residence.
The Commissioner referred the matter for a hearing before an Administrative Law Judge (ALJ). At the hearing, which began on January 30, 1995, Starr represented himself and both he and Carol testified. Both said that James lived with Starr in Woodbury Heights. The Board, in opposition, presented the testimony of Superintendent Smith and that of a teacher who said James had told her he lived in the Knightsbridge Apartments. The Board also presented two private investigators who had conducted surveillance which, they said, demonstrated that Carol and her son lived at Knightsbridge Apartments, that they slept there almost every night, and that James did not reside with Starr in Woodbury Heights.
During the course of the hearing, the Board's attorney presented a "tuition calculation" prepared by the Superintendent. That produced the first indication of any kind that the Board intended to seek monetary relief against anyone:
Q. (By the Board Attorney, Russell E. Paul.) Is that tuition calculation which would be the tuition required for James J. Seltzer in the event he's found not to be properly a resident of Woodbury Heights?
A. (By Superintendent Smith) This is what I sent you.
Q. When was that done?
A. The calculation?
Q. Just last week?
A. Yes.
Mr. Starr: Who would have to pay this? His father?
Mr. Paul: That's for the court to determine.
Mr. Starr: Oh, I'll tell you before I would pay something like that I'd go to Washington, D.C., really which I'm thinking of already. $15,000? I am a tax payer.
A short time later, after the Superintendent noted that annual tuition is $6,190, Starr asked, "What's the purpose of this?" Mr. Paul replied, "because we are seeking tuition, reimbursement in the event there is a finding that the domicile is other than Woodbury Heights."
On March 10, 1995, the ALJ rendered her decision. She reviewed the evidence; noted Carol's claim that "she stayed in an apartment in Knightsbridge ... anywhere from two to five nights a week" and that James stayed with his grandfather in Woodbury Heights "except on weekends when he stayed with her at Knightsbridge"; reviewed the testimony of the teacher and the investigators referred to above; and noted that no one had produced any evidence as to who "provides the necessities of life" for James. She concluded that while Starr "does reside in the (Woodbury Heights) district and is a domiciliary thereof, his grandson [James] is not." She then said,
I FIND and CONCLUDE that not only is [James] not a domiciliary of Woodbury Heights, he is not even a resident of Woodbury Heights.
Respondent [the Board] may now pursue an appropriate action before the Superior Court for the recovery of the tuition funds due to it.
Starr appealed that decision to the Commissioner who rendered his decision on April 28, 1995. The Commissioner said he had reviewed the record of the matter and he *1184 concurs with the ALJ's finding that petitioner's grandson [James], is not domiciled in respondent's district, and is, therefore, not entitled to a free public education in that district.
Accordingly, the initial decision of the ALJ is adopted for the reasons expressed therein, and, pursuant to N.J.S.A. 18A:38-lb(1), the Commissioner directs that petitioner remit to the Board tuition for [James], pro-rated to the time of his ineligible attendance in the district.
Ten days later, on May 8, 1995, Starr wrote to the Commissioner advising that he had sent an "appeal" to the Department of Education. Subsequently, the State Board of Education (State Board), the apparent intended recipient of Starr's "appeal," noted that it was not until September 1995 that it received notice of any such appeal. The Woodbury Heights Board moved to dismiss Starr's alleged appeal because of non-compliance with applicable time limits. The State Board, however, concluded that it would treat the initial letter to the Commissioner as an appeal to it because to do otherwise would be unfair to Starr. Accordingly, it denied the motion to dismiss and directed that a briefing schedule be established.
That decision was rendered on December 8, 1995. By March 6, 1996, the State Board had still not received Starr's brief which had been due (under an extension of time given to counsel) by January 17, 1996. Accordingly, when the Woodbury Heights Board renewed its motion to dismiss, the State Board granted the motion and dismissed the appeal. Starr then appealed that dismissal to this court which issued its opinion on January 9, 1997, noting that a litigant such as Starr is not free to disregard procedural requirements on an administrative appeal. The opinion concluded that "appellant has failed to present any argument challenging the State Board's dismissal of his appeal" and thus the dismissal was affirmed. S.J.S. v. Board of Educ. of Woodbury Heights, No. A-4789-95T3 (App.Div. January 9, 1997).[2]
Meanwhile, after the Commissioner had affirmed the decision of the ALJ, and while the appeal from his decision was pending before the State Board, the Woodbury Heights Board filed suit in the Law Division seeking judgment against Starr for $18,570 representing three years tuition (at a rate of $6,190 per year) for James's attendance in the Woodbury Heights school system.[3] The complaint names only Starr as defendant but does not clearly spell out its theory of liability against him. The first count refers to the proceedings before the ALJ, the Commissioner's affirmance of the ALJ's decision and the Commissioner's direction "that petitioner (Starr) remit to the Board tuition for [James], pro-rated to the time of his ineligible attendance in the district." It concludes by demanding
a judgment against the Defendant, Sarkis J. Starr, enforcing a Decision of the Commissioner of Education of the State of New Jersey, and requests a judgment against the Defendant, Sarkis J. Starr, in the sum of $18,570....
In a second count the Board sought counsel fees and investigative expenses from Starr.
After Starr, through counsel, filed an answer essentially denying the contentions of the complaint, the Board moved for summary judgment. The affidavits in support of that motion essentially tracked the allegations of the complaint. However, they did specify that the September 1994 determination to exclude James from school was directed to James's mother and not to his grandfather. One of the affidavits, from the Board's counsel, contained the following statement:
While the Plaintiff, Woodbury Heights Board of Education was providing [James] with a public education, said minor grandchild was not in fact residing and/or domiciled with the Defendant, Sarkis J. Starr. It was the Defendant, Sarkis J. Starr, who at all times contended that the minor child, [James], resided with him and he was responsible for said minor child.
*1185 There is no more specific allegation as to when or how Starr made any such contention, or any indication that he did so at any time before the Board's September 2, 1994 determination to exclude James from the Woodbury Heights schools.
The Law Division judge granted the Board's motion and entered judgment in its favor for three years' tuition, in the total sum of $18,570, plus interest from the date of the Commissioner's decision. Defendant appeals from that judgment.

I.
The motion judge was correct in concluding that James's non-residency in Woodbury Heights during the school year 1994-95 had already been determined and should not be regarded as an unresolved issue of fact in the Law Division action. That question had been squarely litigated before the ALJ who had resolved it against Starr and in favor of the Board. It was an essential part of Starr's appeal to the Commissioner and there too, by the Commissioner's affirmance of the ALJ's decision, it was decided in favor of the Board.
It was also at the heart of the matter when Starr filed his subsequent appeal to the State Board. Starr had an opportunity to argue that issue before the State Board, which leaned over backwards and bent procedural requirements to give him the opportunity to be heard. As we concluded in our prior opinion, Starr nevertheless ignored his obligations before the Board. The Board was justified in dismissing his appeal, and the findings of the Commissioner thus became final and binding upon him. Those findings include the issue of James's residence and domicile outside of Woodbury Heights during the school year 1994-95. Nothing that has happened since then has changed the effect of that decision, and nothing has given Starr the right to circumvent our prior conclusion as to the State Board's justified dismissal of his appeal.
Where a court is called upon to deal with factual issues already resolved by an administrative agency, as was the Law Division here, the court should accept the factual determinations of that agency:
[W]here the resolution of a contested legal issue properly brought before a court necessarily turns on factual issues within the special province of an administrative agency, the court should refer the factual issues to that agency. The trial court should accept the factual determinations of the agency and lay them against the legal issues to be resolved and enter its final judgment resolving the mixed questions of law and facts based upon the agency fact finding.

[Boss v. Rockland Elec. Co., 95 N.J. 33, 42, 468 A.2d 1055 (1983).]
See also Alexander's Dep't. Stores, Inc. v. Borough of Paramus, 125 N.J. 100, 115, 592 A.2d 1168 (1991).
That principle applies here. Based on the findings and recommendations of the ALJ, the Commissioner determined that James was not domiciled in, or a resident of Woodbury Heights, at least during the 1994-95 year. This court has already held that the Commissioner's determination could not now be challenged because of Starr's noncompliance with the requirements of his appeal to the State Board. The issue of James's residency during the 1994-95 school year is, in short, a closed issue.

II.
Given James's non-residency in Woodbury Heights during the 1994-95 school year, there is ample basis for charging Starr with tuition for that year. First, there is no question that Starr was the moving force in James's remaining in the Woodbury Heights school after the Board raised the residency issue by its September 1994 letter to Carol. It was Starr who appealed the Board's determination to the Commissioner. And it was Starr who litigated the matter before the ALJ, and thereafter appealed the Commissioner's decision to the State Board. N.J.S.A. 18A:38-1 provides that no child shall be denied admission to a school system while such appeals are pending. It was Starr who kept those appeals pending, thus enabling James to spend that third year in Woodbury Heights. The statute authorizes *1186 the Commissioner to assess tuition against the party who files such an appeal and thus fosters such ineligible attendance, and that is exactly what the Commissioner did here.[4]
Second, for the same reasons discussed under Point I above, Starr is not now free to contest the Commissioner's determination of his liability for 1994-95 tuition. That matter was decided against Starr, and that determination became final and binding when he failed to pursue his appeal to the State Board.
It was, of course, the ALJ who first included in her decision a statement that the Board could now proceed with a Superior Court action for recovery of tuition funds. The ALJ did not specify the tuition to which she referred, and the ensuing decision by the Commissioner was similarly cryptic with respect to what tuition was owed by defendant to the Board. His statement was, "The Commissioner directs that petitioner [Starr] remit to the Board tuition for [James], pro-rated to the time of his ineligible attendance in the district."
While, as discussed further below, there is a question as to whether the Commissioner may have intended to impose tuition liability on Starr for all three years, it is certainly clear that he intended at least to impose such liability for the third year. Obviously the Commissioner had directed payment for some period and the directive must certainly have been intended to include at least the 1994-95 school year. There is no conceivable rationale for a contrary conclusion.
Starr argues against our accepting the Commissioner's tuition liability determination because he had not been given notice, prior to the hearing before the ALJ, that the Board intended to seek reimbursement from him. There is some surface merit to that argument because, as noted above, the Board had not advised Starr before the proceeding began that it intended to seek such payment. However, during the proceedings the Board did make clear that it sought tuition reimbursement, although it did not unequivocally state that it sought payment from Starr rather than from someone else, such as either or both of James's parents. By the time the matter wound its way through a decision by the Commissioner, however, Starr's potential liability for tuition was clear. The Commissioner's order "directs that petitioner [Starr] remit to the Board tuition for [James]." Whatever notice and warning had theretofore been lacking, had now been provided, clearly and unequivocally. And while the ALJ had simply referred to "an appropriate action before the Superior Court," the Commissioner's order was much more specific: it directed that Starr pay such tuition to Woodbury Heights. Thus, by the time he filed his appeal with the State Board, Starr knew that the Commissioner had determined that he was liable to the Board for tuition. If he intended to challenge that conclusion, he was obligated to do so by that appeal. His failure to prosecute the appeal deprives him of the opportunity to raise that issue now and, accordingly, there is no basis for us to reverse the determination of Starr's liability for 1994-95 tuition.

III.
While Starr was the moving force in enabling James to attend school in Woodbury Heights during 1994-95, and thus there is a rational basis for a tuition charge against him for that year, that is not true of the two prior years. There is no claim that Starr, rather than Carol, enrolled James in the Woodbury Heights school system for either of those years. There is no claim that he submitted to the Board any false statementor for that matter, any statement of any kind prior to September 1994respecting James's right to attend the local schools. So far as appears, all contacts by the Board and the Superintendent were addressed to Carol and not to Starr. In short, there is no showing or claim that before he challenged the Board's decision to remove James in September 1994, Starr had any involvement of any kind in *1187 placing or continuing James in a Woodbury Heights school.
Nor is there a statutory basis for any such liability. Until it was amended as of January, 1994, the applicable statute, N.J.S.A. 18A:38-1, imposed tuition liability on a "resident" non-parent or guardian only if the "resident" had submitted a false statement in support of the child's right to attend a local school. There is no claim here that Starr ever submitted such a statement.
Both sides have argued the question of whether an amendment to N.J.S.A. 18A:38-1 which became effective on January 11, 1994, can be applied to impose liability on Starr for either or both the 1992-93 or 1993-94 years. We are satisfied that the amendment cannot be applied retroactively against Starr, but we are also satisfied that, even assuming retroactivity, the newly adopted statute would not impose such liability here.
The 1994 amendment continued prior provisions which had permitted school attendance by a child kept in the home of a non-parent resident where the child "is supported by such other person [the resident] gratis as if he were such other person's own child." The statute provided for a required sworn statement from the child's parent or guardian, and a statement from the resident "if so required by the board." It also provided that if the local board rejected the resident's position, the resident could appeal the Board's decision to the Commissioner. The statute then concluded that
the student shall not be removed from school during the 21-day period in which the resident may contest the board's decision nor during the pendency of the proceedings before the commissioner. If in the judgment of the commissioner the evidence does not support the claim of the resident, he shall assess the resident tuition for the student prorated to the time of the student's ineligible attendance in the school district.
The 1994 amendment, however, contained another change which is not mentioned by any of the parties to this appeal. It re-labeled the statutory provisions by designating that which we have been discussing as subsection (1) of section b, and it added a new provision, subsection b(2). That new subsection provided that if the superintendent of a school district found that the parent or guardian of a child attending the local schools was "not domiciled within the district," and the child was not eligible for attendance under the provisions of subsection (1) (i.e., the child was not being "kept in the home of another person" who treated the child as his or her own child, as discussed above), then the superintendent "may apply to the Board of Education for the removal of the child." The section provided for a hearing before the local board and, if the board determined the child was not eligible to attend the local schools, the board could order the removal of the child from school. The child's parent or guardian could then contest the Board's decision before the Commissioner, with the child having a right to remain in the system until the appeal was resolved. The provision then provided that,
[i]f in the judgment of the Commissioner the evidence does not support the claim of the parent or guardian, the Commissioner shall assess the parent or guardian tuition for the student pro-rated to the time of the student's ineligible attendance in the schools of the district. (Emphasis added.)
The proceedings undertaken by the Board here actually seem more consistent with subsection (2) than with subsection (1). As noted above, there is no indication that the Board ever sought a certified statement from Starr. Its communications and requests for documentation were all addressed to Carol. All of its requests for information seem aimed at the question of whether Carol resided with her father, Sarkis Starr, in Woodbury Heights. Nothing submitted by the Board suggested that it was dealing with a claim under subsection (1)a claim that Carol lived in another town but James lived apart from her and with a local "resident" his grandfatherwho treated him as though James were his own child. Starr became the central player in this battle only after the Board advised Carol that her child was being removed from the Woodbury Heights school. His involvement consisted of his filing the appeal with the Commissioner. From all that appears, if the appeal had been filed in *1188 Carol's name (even if her father financed the appeal), no one would have focused on a claim against Starr. At least no basis for any such claim appears in the record.
The difference between a proceeding under subsection (1) and subsection (2), as concerns the liability of Sarkis Starr, is substantial indeed. Subsection (1) provides for imposing liability for tuition on "the resident" with whom the child was claimed to reside. Subsection (2) refers only to assessing tuition against "the parent or guardian" of the child.
Given the lack of any clear statement by the Board that it was proceeding against Starr under subsection (1) of the statute, given that all of its correspondence, notices and demands were to Carol rather than her father, and given that Starr never claimed he was supporting James in the manner described in the statute, we see no basis for imposing liability on Starr under the newly adopted statute, even if we were to assume its retroactive application to the school years 1992-93 and 1993-94.
In fact however, there is no basis to accord such retroactive application to the statute. Statutes, particularly statutes imposing financial liability, are presumed to act prospectively only and not retroactively. A conclusion that the legislature intended retroactive application requires a compelling showing of such intention. See Twiss v. State, Dept. of Treasury, 124 N.J. 461, 467, 591 A.2d 913 (1991). See also State, Dept. of Envtl. Protection v. Ventron Corp., 94 N.J. 473, 498, 468 A.2d 150 (1983); Gibbons v. Gibbons, 86 N.J. 515, 522-23, 432 A.2d 80 (1981) and Rothman v. Rothman, 65 N.J. 219, 224, 320 A.2d 496 (1974).
There is not a semblance of any such showing here. Nothing in the language or policy of the statute suggests an intent to apply it retroactively. And since Starr is not alleged to have done anything to foster James's enrollment in the Woodbury Heights school system before the 1994-95 school year, an attempt to impose such ex post facto liability on him would be so unfair as to raise substantial constitutional questions.[5]Brown v. State Dept. of Personnel, 257 N.J.Super. 84, 89, 607 A.2d 1354 (App.Div.1992); Carnegie Bank v. Shalleck, 256 N.J.Super. 23, 39, 606 A.2d 389 (App.Div.1992).
Finally, we note that, alone among all the participants in this struggle, the Commissioner does seem to have been cognizant of the two distinct subdivisions under subsection b of N.J.S.A. 18A:38-1. In his determination, he directed that "pursuant to N.J.S.A. 18A:38-1 b(1)," Starr must remit to the Board tuition "prorated to the time of his [James's] ineligible attendance in the district" (a formulation spelled out in subparagraph (1) of the new version of the statute). However, the Commissioner set out no rationale for a retroactive application of the statute, and, as noted above, did not specify that his direction referred to tuition for any period before the 1994-95 school year. We think it unlikely that the Commissioner would have overlooked such a substantial issue as the retroactive application of a statute so as to impose a liability of more than $12,000 against Starr. Thus, we believe the most reasonable conclusion as to the Commissioner's determination is that he found Starr responsible for 1994-95 tuition, but made no such finding for the prior two years. If we are incorrect in that regard, and the Commissioner did intend to impose liability for all three years' tuition, we are satisfied there is no basis for that conclusion with respect to the first two years. In either event, the Law Division erred in imposing liability for three years' tuition against Starr and the judgment should not have exceeded one year's tuition, or $6,190. Accordingly, the judgment of the Law Division is affirmed with respect to tuition for the school year 1994-95, and reversed with respect to the *1189 years 1992-93 and 1993-94 and the matter is remanded for entry of a new judgment in the sum of $6,190.
NOTES
[1] Neither this correspondence, nor any other letters, writings or documents of any kind preceding this letter were produced on this appeal by any of the parties.
[2] The Supreme Court denied Starr's petition for certification. S.J.S. v. Board of Educ. of Woodbury Heights, 149 N.J. 141, 693 A.2d 110 (1997).
[3] James "voluntarily" withdrew from the Woodbury Heights school system in June 1995, at the end of the 1994-95 school year.
[4] As discussed further below, the statute contains two different subsections dealing with appeals, respectively, by a non-parent resident (N.J.S.A. 18A:38-lb(1)) or by a parent or guardian (N.J.S.A. 18A:38-lb(2)). Both provide for a tuition charge against an unsuccessful appellant who, by filing an appeal, enables an improperly enrolled child to remain in a district's school.
[5] One might conceivably argue that liability could be imposed on Starr from the effective date of the new act, January 11, 1994. However, that date is in the middle of the 1993-94 school year. Enrollment had been effected long before that, and there is no showing or claim that Starr made any inaccurate or fraudulent statement concerning that enrollment. Considering further the lack of any notice of intention to question James's right to attend the Woodbury Heights schools before September 1994, we find no basis, under any realistic scenario, for imposing liability on Starr for any period prior to the 1994-95 school year.