781 A.2d 1112 (2001)
344 N.J. Super. 337
Donna GOLIAN, Plaintiff-Appellant,
v.
George GOLIAN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted September 20, 2001.
Decided October 11, 2001.
Stein & Stein, attorneys for appellant (Mitchell R. Stein, Succasunna, on the brief).
*1113 O'Donnell & Dumbroff, Sparta, attorneys for respondent (David H. Dumbroff, on the brief).
Before Judges CONLEY, LEFELT and LISA.
The opinion of the court was delivered by LISA, J.A.D.
Plaintiff, Donna Golian, appeals from the portions of a Final Judgment of Divorce pertaining to certain financial matters, which were predicated on imputation of income to her. In particular, she seeks recalculation and redetermination of permanent alimony, equitable distribution of property and counsel fees. Plaintiff has been receiving disability benefits from the Social Security Administration (SSA) effective June 1, 1995. While the trial judge acknowledged plaintiff's SSA disability status, she determined that plaintiff had the burden of proving her inability to work through medical evidence, and since plaintiff presented no such evidence she failed to meet her burden. Plaintiff argues her SSA disability status should result in a presumption of inability to work and the burden should be on defendant to rebut that presumption before income can be imputed to her. We agree and reverse and remand for further proceedings.
The parties married in 1982 and separated in August 1998. They had no children. After a four day trial, they were divorced by Final Judgment entered February 29, 2000. Plaintiff was forty-yearsold and defendant was forty-one-years-old. Both are high school graduates. Plaintiff had one year of college and training to sell insurance. Defendant had two years of college. During the marriage, plaintiff held an assortment of jobs. In the early to mid-1980's, she worked part time in telecommunications, then sold insurance in 1983-84, then obtained a full-time job with Allnet in 1986, earning approximately $20,000 per year. Apparently as a result of injuries received in several accidents she stopped working in approximately 1988. She worked part time as a security guard in 1993-94, earning minimum wage.
Effective June 1, 1995, plaintiff was determined by the SSA to be disabled. At the time of trial, plaintiff was receiving a monthly disability benefit of $585. At trial plaintiff produced in evidence a "Report of Confidential Social Security Benefit Information" issued by the SSA on March 24, 1999, setting forth the amount of her benefits and stating "Our records show that you became disabled 6/1/95 based on a neurological problem." Defendant does not dispute plaintiff's SSA disability status. Indeed, he assisted her in applying for disability benefits and transported her to required conferences and hearings. While the parties lived together, they used the monthly benefits for joint obligations.
Plaintiff testified to her numerous physical, emotional and psychological impairments, including back pain, leg pain and auditory hallucinations. She described her mental health treatment, including twice-aweek visits to the psychologist to which defendant took her for two years. She had been hospitalized twenty-one times during the marriage, including psychiatric confinements. She explained why, in her estimation, she cannot work:
"Due to the conditions I have, it's impossible to do the simplest of tasks, and be specific in what you need to do. I cannot follow through. I don't know what my day is gonna bring. I take medication. Iit knocks me out. I have the pain. I need the rest. I have the auditorial hallucinations, ..."
Medical records submitted during the course of the litigation (not at trial) indicated plaintiff's maladies included cervical herniated pulposus with radiculopathy, bilateral temporomandibular joint dysfunction, *1114 fibromyalgia, multifocal polyneuropathy to the lower extremities, and major depression with psychotic features (i.e. auditory hallucinations with paranoia).
Defendant has no apparent health problems, and he has been gainfully employed throughout the marriage. At the time of trial, he was earning $53,000 annually. At trial, defendant took the position that plaintiff was capable of working. He claimed that during 1997-98 she was caring for her parents on a full time basis, for which her brother was paying her $200 per week, which increased at some point to $325 per week. Plaintiff denied this. She stated she visited her parents regularly and her brother was providing money as a loan to her and defendant (a dispute that was being litigated in a Law Division action). She denied, however, that she was "working" or being compensated. The trial judge made no express finding on this disputed factual issue.
The trial judge considered the SSA disability determination to be evidential, but not binding nor a basis for a presumption that plaintiff was unable to work. Considering all of the evidence, the judge stated "I am not making a finding as to Mrs. Golian's disability, except to say that the proofs have not been placed in the record that would permit me to find that she is disabled." After commenting "Now, if Mrs. Golian is to stay on disability, and this Court can't make any finding that that's going to happen, because there isn't any proof of a disability here," the judge found:
But thisthis Court finds that she does have the capacity, based on what the Court saw and the record before her, to contribute to her own support in the amount of approximately $15,000 a year, which is $15,600it's $300 a week. She has earned up to $20,000 a year in salestelephones sales, and she said when she closed sales, she always went to somebody's house, and that's difficult for her to do in her current physical condition.
She is licensed to sell life insurance, and that is something that she may propose to do. She also has received training from the New Jersey Vocational Rehabilitation, although many years ago, in being a security guard. She mentioned at one point that Mr. Golian was engaged in that occupation, and that it meant walking around a building a couple of times. Perhaps Mrs. Golian could attempt to earn some income inin that area.
But with a woman of her intelligence and ability to relate to people on a personal level, which I saw during the course of this trial, she should be able to obtain a job that isenables her to earn at that level, and which will not only enable [her] to support herself, but possibly assist in her recovery from depression and some of her other ailments. Andand that is really a minimal level of income. It may not even require full time employment in what she does, and is something that could be pursued even from the home.
The judge then utilized the imputed income of $15,600 per year in determining the appropriate awards of alimony and counsel fees to plaintiff and the appropriate distribution of property. In so doing, the judge ordered alimony of $300 per week (compared to a $3,100 per month pendente lite award), reduced the pendente lite counsel fee from $7,500 to $2,000, and divided all property and debts equally between the parties.
Income may be imputed to a party who is voluntarily unemployed or underemployed. Dorfman v. Dorfman, 315 N.J.Super. 511, 516, 719 A.2d 178 (1998). This requires intentional conduct without just cause. Ibid. A party asserting inability *1115 to work due to disability bears the burden of proving the disability. Ordinarily, then, that party must produce evidence to carry that burden.
Here, however, plaintiff had been adjudicated disabled by the SSA. That adjudication required a finding that her physical and mental impairments were "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.A. § 423(d)(2)(A); Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir.2000); Knepp v. Apfel, 204 F.3d 78, 83 (3rd Cir.2000). Such a determination must be individualized, based on evidence adduced at a hearing. Heckler v. Campbell, 461 U.S. 458, 467, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66, 74 (1983).
Plaintiff relies on numerous decisions which hold that determinations of administrative agencies are presumed to be correct. See, e.g., Gloucester County Welfare Bd. v. N.J. Civil Serv. Comm., 93 N.J. 384, 390, 461 A.2d 575 (1983); In re Bergen Cty. Pkwy. 17 Assocs., 324 N.J.Super. 322, 334, 735 A.2d 594 (App.Div.1999); Boyle v. Riti, 175 N.J.Super. 158, 166, 417 A.2d 1091 (App.Div.1980). These cases involve direct review of the administrative determinations, and require courts to give deference to those determinations if supported by substantial credible evidence in the record and not arbitrary or capricious. In re Bergen Cty. Pkwy., supra, 324 N.J.Super. at 334, 735 A.2d 594. These authorities therefore only partially support plaintiff's argument, since plaintiff seeks deference, not on direct review, but in a collateral proceeding.
Our Supreme Court has recognized "that there are important goals to be achieved from the prudent and selective application in administrative proceedings of such doctrines as res judicata, collateral estoppel, and the single controversy rule." Hackensack v. Winner, 82 N.J. 1, 31, 410 A.2d 1146 (1980). This rationale has been invoked to support "limited application of the doctrine of res judicata " whereby administrative findings in one proceeding provide the basis for establishing prima facie evidence of the validity of a claim in a subsequent Law Division action. Sheeran v. Progressive Life Ins. Co., 182 N.J.Super. 237, 251, 440 A.2d 469 (App.Div.1981). The burden then shifts to the party disputing the administrative finding to refute its validity. Ibid. See also Woodbury Hts. Bd. of Educ. v. Starr, 319 N.J.Super. 528, 537, 725 A.2d 1180 (App.Div.1999).
No evidence has been presented to impugn the reasonableness of the SSA determination in plaintiff's case. Defendant assisted plaintiff in obtaining the award. Pursuant to an order in these proceedings, plaintiff signed an authorization giving defendant access to her SSA file, thereby enabling him to scrutinize the basis for the award. In the circumstances of this case, we hold that the SSA adjudication of disability constitutes a prima facie showing that plaintiff is disabled, and therefore unable to be gainfully employed, and the burden shifts to defendant to refute that presumption. Accordingly, we remand for further proceedings, in which the trial judge shall consider such additional evidence which defendant may present to attempt to overcome this presumption. Of course, plaintiff may present rebuttal evidence. Such evidence may consist of lay testimony, expert testimony or medical records, consistent with the Rules of Evidence, as the trial court deems appropriate.
If additional evidence is presented, the trial court shall evaluate it in accordance with the principles expressed in this opinion, and shall determine anew whether income should be imputed to plaintiff. If so, *1116 the financial determinations previously made shall remain undisturbed. If not, the court shall order any modifications as it deems appropriate.
Reversed and remanded. We do not retain jurisdiction.