**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0269-24

M.D.,

     Plaintiff-Respondent,

v.

W.M.,

     Defendant-Appellant.

_____

         Submitted October 14, 2025 – Decided February 2, 2026

         Before Judges Natali, Walcott-Henderson, and Bergman.

         On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-1310-15.

         W.M., self-represented appellant.

         Respondent has not filed a brief.

PER CURIAM

In this one-sided appeal, defendant, W.M.[1] challenges Family Part orders concerning the parties' respective child support obligations and awarding counsel fees to plaintiff. Defendant contends the court erred in its child support calculation analysis in several respects and by awarding counsel fees to plaintiff and denying his counsel fee application. Because we conclude the trial court misapplied its discretion surrounding certain provisions of its child support orders, we vacate or modify portions of the orders and the counsel fee award and remand to the trial court for further proceedings consistent with this opinion. We affirm all other provisions of the orders challenged in this appeal based on the reasons expressed by the trial court.

I.

Plaintiff and defendant were divorced in August 2019 after an eighteen-year marriage. They had three children together: A.M. (Anne), born in 2003, D.M. (Dana), born in 2006, and J.M. (Jon), born in 2011. At the time of the divorce, all three children resided with plaintiff based on orders that granted her residential custody. However, on April 30, 2021, residential custody of Jon was changed to defendant. Plaintiff retained residential custody of Anne and Dana.

---

[1] We use initials and pseudonyms to protect the privacy of the children at the center of the issues on appeal, some of whom are minors. R. 1:38-3(d).

A-0269-24

In June of 2021, the court ordered both parties to attend co-parenting and family counseling and set out a detailed schedule for parenting time and therapy.

In July 2021, defendant moved to modify child support due to the custody change of Jon. On April 13, 2022, the court entered an order modifying child support retroactively to July 21, 2021, the motion filing date. The court prepared two worksheets to calculate child support based on the New Jersey Child Support Guidelines (Guidelines), Pressler & Verniero, <u>Current N.J. Court Rules</u>, Appendix IX-A to -F to <u>R.</u> 5:6A. One worksheet reflected plaintiff's support obligation to defendant for Jon, and the other worksheet set out defendant's obligation to plaintiff for Anne and Dana. The two obligations were then netted, resulting in plaintiff's obligation to defendant for Jon set at $112 per week. The order also directed that any overpayment by defendant as a result of the retroactive calculation be reimbursed to him within 60 days. A subsequent June 16, 2022 administrative order, set forth defendants arrears as -$5,028.50[2] as of June 14, 2022, which defendant asserts determined his child support credit required to be calculated by the April 13, 2022 order.

---

[2] We construe the minus sign prior to the child support amount to connotate a negative support arrearage or credit.

A-0269-24

Thereafter, on February 16, 2023, plaintiff moved for enforcement and modification of the support obligations, including a request for an audit and correction of the child support account/arrearages and payment from defendant for previously ordered college contributions for Anne and Dana. On May 12, 2023, the court ordered the parties to attend economic mediation regarding financial and support issues, but the mediation never took place.

In July 2023, the court stayed child support enforcement, finding any modification would be retroactive to February 16, 2023, the filing date of plaintiff's audit motion pending a hearing. The parties continued to exchange discovery concerning the child support calculation/arrearages and college contribution disputes raised in their motions. Issues arose over whether plaintiff had provided complete discovery, including bank records for college accounts, college transcripts, and related documentation. Despite these issues, both parties eventually agreed that a plenary hearing was unnecessary and consented to the disputed issues being decided by the court "on the papers" submitted.

Our summary of the trial court's findings that follow are limited to the issues raised on appeal. In its July 19, 2024 written decision, the court found a change of circumstances had occurred because Anne "was in college and no

4

longer covered by the . . . [g]uidelines" and there was a "change in disability benefits for defendant."

The court's decision retraced several changes in custodial arrangements, notably the shift in custody of Jon to defendant in 2021. After referencing several prior child support orders, the court determined that modification of support would be retroactive to February 16, 2023, coinciding with plaintiff's motion requesting an audit due to guideline calculation errors and changed circumstances, including Anne's college enrollment and defendant's receipt of Social Security Disability (SSD) benefits. The court found that plaintiff had preserved her retroactivity request through the filing of her motion.

The court found child support should be calculated under the Guidelines, and because there was a split-parenting arrangement, separate worksheets for each child were required. The court determined for the period between February 2023 and May 2024, support for Anne and Dana were required to be set outside the Guidelines, using statutory factors such as individual needs and parental income, assets, earning ability, health, and debts, pursuant to our holding in Jacoby v. Jacoby, 427 N.J. Super. 109 (App. Div. 2012), and the factors set forth in N.J.S.A. 2A:34-23(a).

A-0269-24

The court also determined the parties' respective incomes for child support purposes and prepared child support worksheets based on those incomes. Concerning defendant, the court found rental income he received for an investment property was $9,856.00 per year or $190.00 taxable per week. The court determined deductions for expenses such as mortgage, exterminator and taxes were appropriate but deductions for depreciation and wages paid were not permitted. The court further found defendant could work and imputed income to him of $18,600 per year or $358 taxable per week despite proofs provided by defendant that he was declared disabled through the Social Security Administration (SSA). The court imputed this income to defendant because "no medical documents" were provided by defendant supporting an inability to work. The court found defendant's SSD benefits were $21,527 per year or $414 non-taxable per week and Jon's derivative SSD benefits were $115 per week non-taxable from February 2023 through June 2024, and $230 per week non-taxable from July 2024 forward. The court specifically determined that defendant's case information statement was not believable, citing that he claimed zero expenses for food, clothes, entertainment, internet, fuel, and auto expenses.

The court found plaintiff's income to be $49,529 per year or $953 gross per week based on her W-2 statements from three jobs she held. The court set

6

each child's share of the health insurance premium at $6.00 per month, which was the average between $5.00 listed by defendant and $7.00 as listed by plaintiff as no other proofs were provided.

As reflected on the Guidelines worksheets in the record, the court set the support for Anne during her college tenure between February 2023 through May 2024 at $125 per week from defendant to plaintiff. As of May 2024, the support was set at $150 per week payable from defendant to plaintiff, reflecting increased needs. Effective June 2024, the court set child support for Jon from plaintiff to defendant at $138 per week. From February 2023 to May 2024, the court determined defendant was obligated to pay plaintiff $48 per week in child support, and for June 2024, plaintiff was obligated to pay defendant $67 per week. From July 2024 forward, the court found the net effect of all support obligations resulted in defendant having an obligation to plaintiff of $9 per week in child support. Since plaintiff had declined further support, the court ordered no child support between the parties until Dana's emancipation. At that point, plaintiff would be required to pay defendant $138 per week in child support for Jon until his emancipation.

The court expressly rejected defendant's arguments that he should not be obligated to pay child support due to the alleged poor relationship between he

and Dana, stating the law imposes a financial support duty that is separate from relationship quality. The decision also denied relief for defendant's claimed overpayments/credits and increased arrears payments, citing the lack of any substantiating evidence and noting such issues could be addressed through probation once accountings were corrected.

Finally, the court considered the parties' cross applications for counsel fees. While plaintiff requested $27,985 and defendant requested $10,000 in attorney's fees from the other, the court awarded plaintiff $2,200, finding defendant's positions largely reasonable but that some unnecessary legal work resulted from defendant's failure to acknowledge guideline errors. Defendant's request for fees was denied in its entirety.

On August 8, 2024, the court issued an amended order that added a summary section at the end of its original decision for clarity, laying out the net obligations for each time period. The order specifically stated that defendant owed plaintiff $48 per week from February 2023 to May 2024; plaintiff owed defendant $67 per week for June 2024; no support obligation between the parties from July 2024 until Dana's emancipation; and after Dana's emancipation, plaintiff was obligated to pay defendant $138 per week in child support for Jon.

8

Defendant appeals from the trial court's July 19 and August 8, 2024 orders contending the court erred (1) by retroactively modifying child support; (2) by imputing him income for child support purposes; (3) in its calculation of child support in several different respects, including its denial of his application for child support credit; and (4) by awarding plaintiff counsel fees while denying his request.

## II.

"Our review of a Family Part judge's findings is limited[,] . . . 'afford[ing] substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters.'" Voynick v. Voynick, 481 N.J. Super. 207, 220-21 (App. Div. 2025) (quoting W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021)). Pursuant to this standard, "we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Moynihan v. Lynch, 250 N.J. 60, 90 (2022) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "We will reverse only if we find the [court] clearly abused [its] discretion." Voynick, 481 N.J. Super. at 221 (alterations in original) (quoting Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012)).

"We apply that deference to a Family Part judge's decision regarding a motion to amend a marital-support obligation," ibid. (citing Cardali v. Cardali,

A-0269-24

255 N.J. 85, 107 (2023)), or a child support obligation, Jacoby, 427 N.J. Super. at 116. "Thus, a Family Part judge's decision regarding a support obligation should not be disturbed unless 'the court made findings inconsistent with the evidence or unsupported by the record or erred as a matter of law.'" Voynick, 481 N.J. Super. at 221 (quoting Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013)).

However, the "[court's] legal conclusions, and the application of those conclusions to the facts, are subject to [a reviewing court's] plenary review." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Reese, 430 N.J. Super. at 568). We review questions of law and statutory interpretation decisions de novo. Cardali, 255 N.J. at 107.

We find no merit to defendant's contentions that the court erred (1) by retroactively modifying child support; (2) in the majority of its analysis concerning the calculation methodology and effective dates for the ongoing modification of child support; and (3) in its findings regarding child support credits. We therefore affirm all the provisions of the court's orders for the reasons stated by the trial court except those provisions we address below.

Addressing the trial court's analysis and calculation of child support, we conclude the trial court misapplied its discretion by imputing defendant income.

A-0269-24

Because the income imputed to defendant effects the Guidelines calculations and the ultimate child support obligations, we vacate the child support obligations set forth in the orders. When the SSA has determined that a party is disabled, a presumption of disability is established. Gormley v. Gormley, 462 N.J. Super. 433, 444 (App. Div. 2019) (citing Golian v. Golian, 344 N.J. Super. 337, 341-42 (App. Div. 2001)). When a party has been adjudicated disabled by the SSA, that determination "constitutes a prima facie showing that [a party] is disabled, and therefore unable to be gainfully employed, and the burden shifts to [the opposing party] to refute that presumption." Golian, 344 N.J. Super. at 342-43; see also 42 U.S.C. § 423(d)(1)(A) and (2)(A);[1] Diehl v. Diehl, 389 N.J.

---

[1] Disability is defined by the SSA as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under 42 U.S.C. § 423(d)(2)(A),

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

Super. 443, 451 (App. Div. 2006) ("The determination of [a litigant's] disability is prima facie evidence of [an] inability to pursue gainful employment.").

Evidence an opposing party can present to rebut the presumption of disability may include "lay testimony, expert testimony[,] or medical records, consistent with the Rules of Evidence, as the trial court deems appropriate." Gormley, 462 N.J. Super. at 444 (alteration in original) (citing Golian, 344 N.J. Super at 343). If the opposing party rebuts the presumption of disability, the trial court may then impute income to the party receiving disability benefits. Ibid.

Based on a review of the record, we conclude the trial judge misapplied the controlling law concerning the imputation of income to defendant because he was declared disabled by the SSA. In this instance, although we agree with the trial court that income may be imputed to a party for child support purposes under certain circumstances, the court failed to provide adequate reasons to impute $18,600 per year in income to defendant when taking into account evidence in the record showing that defendant had been declared disabled by the SSA as of April 2, 2016. The SSA determined defendant's disability in a decision dated February 13, 2019.

A-0269-24

In its decision, the court found, "[n]o medicals were provided [by defendant] on the issue of the ability to work." The record shows no dispute existed that defendant was determined to be disabled by the SSA as of 2016. Therefore, the court's imputation of income of $18,600 was error because defendant made a prima facie showing of disability through admission of the SSA determination dated February 13, 2019. The court had included defendant's disability benefit and Jon's derivative SSD benefits in its calculation of child support. The burden to prove defendant was not disabled was then shifted to plaintiff, who presented no rebuttal evidence in her submissions. We further note the court's decision was absent of any findings concerning the evidence it relied upon to rebut the presumption of defendant's disability. For these reasons, we vacate the provisions of the orders that set child support based on calculations in the Guidelines worksheets that included imputed income to defendant. We remand to the trial court to recalculate child support without the imputed income.

We now address defendant's argument asserting the court erred by applying the 14.6% upward adjustment under the Guidelines at Appendix IX-A at ¶ 17. We conclude this argument lacks merit. We are hampered, to a degree, by the failure of defendant to provide a complete record on appeal. Rule 2:5-

13

4(a) states in relevant part: "The record on appeal shall consist of all papers on file in the court or courts or agencies below, with all entries as to matters made on the records of such courts . . . ." See also R. 2:6-1(a)(1)(I) (The appendix must contain parts of the record "essential to the proper consideration of the issues."). Although defendant provided a voluminous appendix, he failed to provide the 2015 order that he asserts is the initial child support order, nor does his merits brief cite to the page of the appendix where the 2015 order he relies upon is located. We deem this order and the basis of the support amount to be "essential to the proper consideration of the issues" before us, ibid., and its exclusion inhibits our review.

Even if we were to consider defendant's argument on its merits, we conclude it fails because he admits the initial 2015 child support order was an unallocated support amount not calculated pursuant to the Guidelines. Since defendant has failed to provide proofs showing the Guidelines were utilized for the 2015 unallocated child support obligation that included Anne in the calculation, his contention the trial court committed error by applying the upward adjustment fails.

We next address defendant's assertion the trial court erred by setting a future child support order for Jon of $138 per week upon the emancipation of

14

Dana.  Defendant argues the calculation of child support should be based on the parties respective income at the time Dana is emancipated.  The trial court set an effective date for Jon's child support to take effect on the date Dana is emancipated; an event that had not yet occurred,[3] and calculated Jon's child support using the parties' income at the time of the hearing in 2024.

The relevant portion of the Guidelines regarding this issue states:

> Effect of Emancipation of a Child
>
> If the guidelines were used to calculate a child support award for two or more children, the emancipation of a child shall not result in a proportionate reduction of the support order (i.e., based on the economic evidence, it is not appropriate to reduce an order for two children by half if one child becomes emancipated).  Instead, child support award should be recalculated based upon the current income of the parents and the number of unemancipated children.
>
> [Appendix IX-A at ¶ 24.  (emphasis added).]

Here, the court's order differs from the standard set forth in the Guidelines at Appendix IX-A requiring a court to utilize "the current income of the parents and the number of unemancipated children" in its calculation.  This section requires the current income of the parties at the time of the emancipation event

---

[3] At the time of the issuance of this opinion, Dana was twenty years old.  We are unaware whether she has been emancipated.

to be utilized to calculate Jon's child support, unless good cause is shown otherwise by a party. A court may deviate from the Guidelines "only where good cause is shown," and "the determination of good cause shall be within the sound discretion of the court." R. 5:6A. We recognize the court's intention to avoid future litigation between the parties, but we are constrained to conclude the court misapplied its discretion by setting a future child support award[4] based on the parties' income in 2024. The record demonstrates no good cause was shown to deviate from the requirement in the Guidelines for the court to utilize the parties' current incomes at the time of the emancipation event to calculate child support.

Nevertheless, we conclude the remedy here is fairly simple and is accomplished through a minor modification to the court's order by permitting the parties an opportunity to file an application, if either desires, at the time of the emancipation event to determine Jon's child support based on the current income of the parties at that time. We therefore modify the trial court's July 19, 2024 order and add the following at the end of page 12:

---

[4] Our determination is not intended to create a bright line rule prohibiting a trial court from setting a future modification of child support. But any such order must include findings as to the good cause to deviate from the Guidelines' presumptive application.

A-0269-24

> The above child support award set by the court at $138 per week for Jon shall remain in full force and effect until either party files a motion to recalculate support based on Dana's emancipation. Any motion shall include a fully completed Case Information Statement with all required attachments, including their prior year's tax return, W-2 forms or other forms showing their prior year's income, and three most recent paystubs from all employers showing a year-to-date income. If a motion is filed within 45 days of Dana's emancipation, any modification shall be effective on the date of emancipation, otherwise any modification shall take effect on the filing date of the motion. Plaintiff shall provide defendant 14 days' written notice of Dana's expected graduation date.

Because we have vacated and modified certain portions of the child support orders, we deem it appropriate to also vacate the portion of the orders concerning the award of counsel fees. We remand the counsel fee issue applications of both parties to the trial court to decide anew, in light of our determinations herein and their relevance to a counsel fee award analysis under Rule 5:3-5.

Further, we direct the trial court to issue an amended order reflecting our modifications to the July 19, 2024 order at page 12 and to hold a case management conference within thirty days from the issuance of this opinion. At the conference, the court shall determine if further discovery is necessary, if the parties should be required to submit additional evidence to the court and if a

17

plenary hearing or other proceedings are necessary for the court to fully decide the issues required by this remand.

To the extent we have not addressed any of defendant's arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion and we affirm for the reasons set forth by the trial court. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated and modified in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division