871 A.2d 781 (2004)
377 N.J. Super. 191
Cindy WASSERMAN, Plaintiff
v.
Eugene PARCIASEPE, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Passaic County.
Decided December 3, 2004.
*782 Celine November, Hackensack, for plaintiff.
Thomas Raimondi, Wayne, for defendant (Afflitto, Raimondi & Afflitto, attorneys).
SELSER, J.S.C.
The issue in this case is the degree of proof needed to overcome a presumption of unemployability as it relates to alimony.
This matter was a post judgment application of the plaintiff in which she sought discovery of the defendant's medical records, which were necessary to the ultimate relief she was requesting, a termination or modification of her obligation to pay alimony to the defendant. The defendant filed an answering certification opposing all the relief. On June 20, 2003, the court entered an Order for the requested discovery and directing that a plenary hearing would be necessary on the issue of modification or termination of the alimony obligation. Thereafter, the parties did engage in discovery as set forth in the court order. The defendant later made a motion seeking an increase in alimony alleging there were changed circumstances by the plaintiff (i.e., she was making a lot more money) and that the original amount of alimony ordered was not able to keep him in a lifestyle commensurate with that enjoyed during the marriage.
*783 The essential history of the case is as follows. The parties were divorced June 26, 2002, by a Judgment signed by this court. The matter was not settled and the court heard a full trial on all issues in reaching its decision. Prior to the trial, and for sometime back into the marriage, the defendant was not working and on Social Security disability income because of kidney disease. About four months before the trial, in February of 2002, the defendant fortunately received a kidney transplant. At the time of the trial, he was still on Social Security disability as kidney transplants have some severe rejection issues for a significant time after the transplant surgery.
The Judgment of Divorce reflects the court's opinion that the defendant receive permanent alimony in the amount of $400 per week. In reaching its decision the court made a finding of fact that the income of the plaintiff was $130,000 per year and the income of the defendant was only the Social Security disability benefits he received of $13,000 per year.
The plaintiff now moves for a modification or termination of alimony. In the plenary hearing, plaintiff had to prove to the court that she has overcome the presumption of the defendant's inability to work that was raised by Social Security disability payments. See Golian v. Golian, 344 N.J.Super. 337, 781 A.2d 1112 (App.Div.2001).
At the plenary hearing, the plaintiff produced two witnesses, Dr. Joseph A. Vassalotti, a nephrology specialist, and Dr. David B. Stein, a licensed rehabilitation counselor/employment counselor, Dr. Vassalotti had reviewed over 100 pages of medical records, concerning the defendant, including records before the transplant, the operative report of the transplant, the discharge report from the transplant surgery, and the subsequent medical records on defendant's blood work and urine testing. In addition Dr. Vassalotti personally did a physical exam of the defendant. In his opinion, Dr. Vassalotti indicated that the defendant was experiencing, fortunately, normal kidney function at this time and had been for quite some time. The doctor did note that the defendant suffered from some other physical maladies. His opinion was that the defendant was capable of full time employment, although with some restrictions. Those restrictions were that the defendant keep taking all prescribed medication, that he keep all clinic visits and that his employment should not include any vigorous activity or weight lifting. The doctor pointed out that vocational rehabilitation is often a goal after transplant surgery of this type.
Plaintiff's next witness was Dr. David B. Stein, who is a licensed rehabilitation counselor. Dr. Stein interviewed the defendant extensively and with this information did research on jobs available with certain medical restrictions. Dr. Stein did develop an historical employment picture for the defendant both before and since his kidney disease problems. Dr. Stein was aware of the medical restrictions placed on the defendant. Dr. Stein's opinion was that the defendant is employable on what he termed "light duty work" in the securities sales area, sound engineering, bookkeeping and photography. Dr. Stein then opined that a reasonable rate of compensation for services of the defendant would be in a range of $30,000 to $77,000. He lastly opined that he felt realistically defendant could expect to find a job in the $40,000 to $60,000 range.
In opposition, the defendant took the witness stand on the issue of his employability. In his testimony he recounted to the court, medically related problems he has other than the kidney disease. These *784 included hypertension, blood-pressure issues, sleep apnea, gout, edema, diabetes, numbness in his hands and feet and a significant weight problem (defendant is significantly overweight). He informed the court of the eleven (11) different medications he takes on a daily basis. He testified that he sees doctors concerning his kidney disease and that weekly he was going to a psychotherapist. In his testimony, he did make the statement "I want to get a job." He testified that his income now is about $1,100 a month from Social Security, $400 a week from alimony and minimal income from photography which is not commensurate with his lifestyle in the marriage. He testified that the plaintiff's income has substantially increased.
Trials are often won or lost on the premise of the shifting burden of proving facts essential to the contestant's cause of action or defense. On closer examination, it is not the burden of proof itself that often switches between the contestants in a trial, but, it is the burden of going forward (often referred to as the burden of persuasion) that may shift several times within the context of one trial. The contestants to a litigated case often do not recognize this shifting burden of going forward, and, are therefore not prepared to meet the proofs needed to establish their action or defense.
The initial burden of proof normally lies on the proponent of the particular fact in question. "Simply stated, a presumption requires the fact finder, once it finds the existence of one fact, to presume the existence of another fact." Ahn v. Kim, 145 N.J. 423, 438, 439, 678 A.2d 1073, 1081 (1996). In dealing with presumptions, the basic fact that has been established is called the "elemental fact" and the fact that is presumed is referred to as "evidential fact" (here, the elemental fact is that the defendant is on Social Security disability and the evidential fact is that he is not capable of employment). What the presumption does is that it satisfies the initial burden of proof on the proponent of the fact, so that the burden of going forward with evidence shifts to the party opposed to the fact. SSI Medical Services v. State Department of Human Services, 146 N.J. 614, 625, 685 A.2d 1, 6 (1996). While the burden of going forward shifts between parties, the burden of proof remains with the party offering evidential fact. New Jersey Rules of Evidence, 301; see also Lembaga Enterprises v. Cace Trucking, 320 N.J.Super. 501, 507-508, 727 A.2d 1026, 1029-1030 (App.Div.1999).
There are different types of presumptions and the litigants would do well to identify the presumption involved in their matter since it may affect the degree of proof necessary to establish the elemental fact or to refute the presumed evidential fact. Presumptions can be statutory or non-statutory (here, the presumption is by case law and not statutory). Presumptions can be conclusive, meaning that no evidence to the contrary would be admissible to refute the presumption. Freehold Twp. v. Javin Partnership, 15 N.J.Tax 88 (1995). Presumptions may be rebuttable, where proof to refute the presumed fact is allowed. There can be presumptions of law or presumptions of fact. Presumptions can be artificial or logical. Artificial presumptions are those created because of considerations of public policy. Logical presumptions are those where there is a "rational connection" on the basis of "logical probability" between the elemental fact and the evidentiary fact. State v. Thomas, 132 N.J. 247, 254-255, 624 A.2d 975, 978 (1993). In the case at bar, we are working with a non-statutory presumption that is rebuttable, logical and a *785 presumption of fact. Once identified we can move forward to determine the degree of proof necessary to refute the presumption.
A review of case law regarding presumptions reveals a variety of answers to the question of the amount of proof necessary to refute the presumption. In Dwyer v. Ford Motor Co., 36 N.J. 487, 507, 178 A.2d 161, 171 (1962), the court indicated that the presumption of fact in the Dwyer case would be "... emptied of all probative force and disappears from the case upon the introduction of any proof to the contrary." Contrast the case of Spear v. Lyndale Mfg. Co., 35 N.J.Super. 385, 114 A.2d 314 (App.Div.1958) where the court indicated that the presumption at issue would disappear when met by "positive, substantial and repellent evidence." If the proof offered to refute the presumed evidential fact is equal to the supporting data of the elemental fact, then the opponent of the presumed evidential fact has failed to carry their burden of going forward, Aluminum Co. of America v. Preferred Metal Products, 37 F.R.D. 218 (D.N.J.1965). New Jersey courts have ruled that the contradictory evidence to the presumed evidential fact must be such that after being admitted "reasonable men" would differ as to whether the presumed fact could be found. Harvey v. Craw, 110 N.J.Super. 68, 73, 264 A.2d 448, 451 (App.Div.1970). In State v. Segars, 172 N.J. 481, 799 A.2d 541 (2002) the Court indicated the contrary evidence must raise a "genuine issue of fact". Again, the court spoke in Rumson Borough v. Peckham,7 N.J.Tax 539 (1985) and referred to the evidence needed as that which would "raise a debatable question."
The Supreme Court of New Jersey has spoken about the degree of contrary proof needed to defeat a presumption in a matrimonial context, see Stern v. Stern, 66 N.J. 340, 331 A.2d 257 (1975). The issue in the Stern case was the value of the plaintiff's interest in his law firm. The Court indicated that the value placed on that interest is presumed to be that value required in the law firm's agreement on the death of a partner. The Court went on to indicate that the opponent of this presumed evidential fact had the duty of going forward with evidence to refute this presumption by clear and convincing evidence. Stern, supra, at 347, 331 A.2d at 261.
The issue then for this court to decide is whether the same degree of proof (clear and convincing) is to be applied in a matrimonial case to a presumption concerning alimony. The Court in Stern held that the clear and convincing standard applied to only the equitable distribution question in that case. It did not speak about alimony. The Stern decision did indicate that the general standard of a preponderance of evidence is what is used most often in a civil case. However, the higher degree of proof (clear and convincing) is necessary only when there are some policy considerations for the greater degree of proof. Stern, supra, at 347 n. 6, 331 A.2d at 261 n. 6; see also In re Weeks' Estate, 29 N.J.Super. 533, 103 A.2d 43 (App.Div.1954). The Court in Stern indicated that the dollar value for the buyout of a partner's interest on the death of the partner, if the formula for the calculation of that figure was reasonable and periodically reviewed, was a strong policy consideration for requiring the greater degree of proof.
Shall we do the same with alimony? New Jersey courts have established the policy that no spouse should be turned out of a marriage without sufficient funds to continue to live in a lifestyle reasonably similar to that established in the marriage, See generally Crews v. Crews, 164 N.J. 11, 751 A.2d 524 (2000) and Weishaus v. Weishaus, 180 N.J. 131, 849 A.2d 171 (2004). In both cases, the court expressed *786 a strong policy that former spouses should be placed in an economic position of leading a reasonably similar life style to the one they enjoyed when married.
It is therefore the ruling of this court that, as to alimony, the opponent of the presumed evidentiary fact must offer proof that is clear and convincing in refuting the evidential fact. Only then will the proponent of the evidential fact have the responsibility to offer more proof in order to sustain its burden of proof. Clear and convincing evidence seems logically required in the case at bar, since the evidence supporting the elemental fact (that the Social Security Administration determined the defendant to be disabled) included a physical exam and review of numerous medical records giving rise to a well supported elemental fact.
The plaintiff did refute the presumed evidential fact by clear and convincing proof. The testimony of Dr. Vassalotti was clear and very credible. The opinions he expressed were based on a physical examination of the defendant and the doctor's review of over 100 pages of medical records on the history of this defendant.
The plaintiff, having refuted the presumed fact of unemployability, then also went forward with a vocational expert to indicate the type of job and income the defendant was capable of earning. The testimony offered by Dr. Stein was also extremely credible. Dr. Stein indicated in his testimony that the defendant was employable on a full time basis although with restrictions concerning lifting and vigorous activity. Basically he requires a light duty job. Dr. Stein did develop in his testimony occupational descriptions of the type of jobs that this defendant could fulfill, given his restrictions, and further given his employment history.
Thus, the burden of proof to establish the need for alimony remained with the defendant and he now had the obligation to go forward with proof. To satisfy that burden the defendant himself testified at length. He detailed his numerous physical ailments. He detailed the medications he takes each day. He offered to the court that as a result of the ailments and the medications he often feels fatigued and unable to concentrate. This court does accept the defendant's testimony that he suffers from several ailments including gout, obesity and sleep apnea. However, it is this court's opinion that based on all of the evidence reviewed, the defendant is still capable of full time, light duty employment. It is the court's opinion that the defendant can engage in job occupations such as photography and bookkeeping. The court is of the opinion and will in fact impute to this defendant income of between $35,000 and $40,000 per year. It is therefore this court's opinion that the alimony payable by the plaintiff to the defendant shall be reduced to the sum of $150 per week.