50 A.3d 110

JULIE GILLIGAN, PLAINTIFF, v. MICHAEL GILLIGAN, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part Ocean County

March 9, 2012.

*Julie Gilligan,* plaintiff, pro se.

*Roberta Luchansky,* for defendant (*Community Health Law Project,* attorneys).

L.R. JONES, J.S.C.

In *Golian v. Golian,* 344 *N.J.Super.* 337, 781 *A.*2d 1112 (App. Div.2001), the Appellate Division held that a family court adjudicating support obligations must give appropriate deference to a

determination by the Social Security Administration (SSA) that a party is disabled. Specifically, a plaintiff who qualified for Social Security Disability (SSD) benefits was presumed by the court to be disabled, and the burden of proof shifted to the defendant to prove to the contrary.

Subsequently, there has been relatively little reported case law exploring the parameters of *Golian*,[1] particularly in the context of an application by an allegedly disabled person to reduce his or her obligation to pay child support and existing arrears. Presently, however, this court is now confronted with a case and fact pattern that requires a detailed legal interpretation and analysis of the scope of *Golian*.[2] For the reasons set forth in this opinion, the court holds the following:

A) *Golian* does not stand for the proposition that an SSD award letter itself is automatically sufficient for the family court to conclude that the party cannot work in any capacity or earn any income to pay child support or arrears.

B) When a party alleges a post-divorce disability that renders him or her unable to work at all and pay any child support, that party must provide more evidence to the court than simply the SSD award letter itself to prove his or her case.

---

[1] In the decade following its publication, *Golian* has apparently been addressed in three reported opinions, none of which directly analyze the issues presented in this case. *See Diehl v. Diehl*, 389 *N.J.Super.* 443, 451, 913 *A.2d* 803 (App.Div.2006) ("the determination of disability is prima facie evidence of an inability to pursue gainful employment"); *Storey v. Storey*, 373 *N.J.Super.* 464, 471, 862 *A.2d* 551 (App.Div.2004) (disability determination relates to ability to obtain or perform work in prior field and is entitled to significant weight); *Wasserman v. Parciasepe*, 377 *N.J.Super.* 191, 195, 200, 871 *A.2d* 781 (Ch.Div. 2004) (SSD payments raise presumption of one's inability to work, which the other party may overcome by clear and convincing evidence).

[2] The parties have two children, including one who is over eighteen years of age and allegedly disabled as well, and one who is under eighteen. In addition to the issues presented in this opinion, this case presents other disputed issues of fact between the parties including (a) whether their older son should be deemed emancipated or unemancipated, and (b) whether plaintiff should receive child support for their younger son who is temporarily residing away from both parties. This opinion focuses specifically upon the legal issues relative to the effect which an SSD award may have on one's obligation to pay child support and arrearages. The remaining issues shall be adjudicated by the court at the scheduled plenary hearing.

C) A parent who claims that a disability prevents him or her from paying child support or arrears has an obligation to provide the other parent with the opportunity to review the underlying medical reports upon which the in the SSD award was based, along with any additional medical reports regarding the nature and extent of the disability, diagnosis, and prognosis relative to engaging in employment.

D) When the SSA declares a person disabled and eligible for SSD benefits, such a finding cannot, without further inquiry, automatically be considered tantamount to a finding by the SSA that the person cannot work or earn *any money at all.* To the contrary, under the SSA's own definitions and regulations, a disabled person may work and earn up to a maximum amount of income each year while still qualifying for benefits and maintaining his or her disabled status.

E) A declaration of disability by the SSA is a determination that the applicant cannot engage in *substantial* employment or gainful activity (SGA), which is distinguishable from being unable to work and earn any money at all. If a person claims that he or she cannot work at all, as opposed to being only unable to engage in any substantial work activity, it is that party's burden of proof to produce supporting and substantiating evidence of the validity of this claim beyond mere submission of the SSD award itself.

F) While some persons may be unable to engage in any income-producing work at all due to the nature of their disabilities, not every disability is the same. Other disabled persons may in fact be able to earn some degree of income under SGA levels and generate supplemental income, which can be used to help support a dependent child and pay back existing child support arrears. A family court may consider a disabled obligor's potential ability to earn additional income under SSA regulations in determining the level of his or her ongoing child support obligation and schedule for repayment of accrued arrears.

## BACKGROUND FACTS

Plaintiff and defendant divorced in 2002. They have two children. At the time of divorce, defendant had a child support obligation of $190 per week, which increased over time to $237 per week as a result of COLA adjustments.

Over the next several years, defendant amassed significant child support arrears. Pursuant to current probation department records, defendant presently owes plaintiff over $90,000 in unpaid child support.

Defendant now asserts that he has been declared disabled by the SSA. He seeks a court order reducing his support obligation to zero, and further reducing his obligation for repaying his child support arrears to a minimal amount of $5 per week. He attaches

a copy of the SSD award letter to his application. However, the letter does not disclose the exact nature of the disability. Defendant essentially argues that pursuant to *Golian*, *supra*, 344 *N.J.Super.* 337, 781 *A.*2d 1112, the court must presume him disabled and unable to work and pay support, with the burden of proof shifting to plaintiff to prove the contrary by clear and convincing evidence. *See Wasserman*, *supra*, 377 *N.J.Super.* at 200, 871 *A.*2d 781.

Plaintiff argues against defendant's position. She does not summarily accept defendant's contention that he cannot work or pay any child support at all, and further asserts that it is inequitable to reduce defendant's support obligation to near-zero amounts given the fact that he owes her over $90,000 in unpaid support. Further, plaintiff urges that she only earns a minimal income herself (imputed at $346 per week in gross income), and that economically it will be very difficult for her to support the children without additional financial contribution from defendant.

Regarding SSD derivative benefits, which may be payable by the SSA to the children as a result of defendant's disability, only one of the parties' two children qualifies for such benefits. The parties' older child, is twenty years old. While there is a dispute between the parties as to whether this child should or should not be emancipated under New Jersey law, in either instance he is not entitled to receive derivative SSD benefits from defendant's disability as he is over eighteen and no longer in high school. As for the parties' younger child, he is seventeen years old. While technically he still qualifies for derivative SSD benefits, these benefits are only $79 per month and clearly insufficient to support the child without additional financial assistance from both parents.

█ Accordingly, the primary issue before the court is whether, based upon defendant's SSD status, the court should essentially relieve defendant of his obligations to pay child support and repay arrears in any financially meaningful way. To resolve this issue, the court must consider and reconcile the public policy considerations of *Golian* regarding SSA determinations with the equally

important public policy considerations regarding collection of child support. Indeed, New Jersey has a strong public policy requiring parents to support their children. *See Daly v. Daly,* 21 *N.J.* 599, 123 *A.*2d 3 (1956). This court notes that the *Golian* court had no occasion to address the relationship between these two arguably competing policies, as the facts and issues presented in *Golian* did not in any way deal with child support or children. Rather, *Golian* dealt with an SSD recipient who had no children and who was seeking alimony from her spouse.

As noted, *infra,* there are other distinguishing factors between *Golian* and the present case, which are relevant in considering the merits of defendant's argument that the court should reduce and terminate his child support obligation to zero. While *Golian* stands for certain principles relevant to recognizing an SSD recipient's disability, the *Golian* court enunciated those principles in the context of very different facts than those now before the court. As noted by the *Golian* court itself, its ruling was expressly rendered *"in the circumstances of this case." Golian, supra,* 344 *N.J.Super.* at 342, 781 *A.*2d 1112.

 Facts, not principles of law, decide cases. *Bendix Corp. v. Dir. Div. of Taxation,* 125 *N.J.* 20, 41, 592 *A.*2d 536 (1991). Our law is not to be applied in the abstract, but must be considered in light of the facts in an individual case. *Hanover Ins. Co. v. Franke,* 75 *N.J.Super.* 68, 74, 182 *A.*2d 164 (App.Div.1962), *certif. denied,* 38 *N.J.* 308, 184 *A.*2d 421 (1962). Family court is a court of equity. Accordingly, the court may give full range to equitable doctrines in dealing with matrimonial controversies. *See Kazin v. Kazin,* 81 *N.J.* 85, 94, 405 *A.*2d 360 (1979). Equity never permits a rigid principle of law to smother the factual realities to which it is sought to be applied. *Am. Assoc. of Univ. Prof's. v. Bloomfield Coll.,* 129 *N.J.Super.* 249, 274, 322 *A.*2d 846 (Ch.Div.1974), *aff'd,* 136 *N.J.Super.* 442, 346 *A.*2d 615 (App.Div.1975). Depending on the circumstances, an equitable adjustment of the rights of the parties may vary from one case to another. *Vasquez v. Glassboro Serv. Ass'n,* 83 *N.J.* 86, 108, 415 *A.*2d 1156 (1980).

The first additional distinction between *Golian* and the present case is that, in the latter, the only evidence of disability defendant supplies is a copy of the SSD award letter itself. He produces no underlying medical reports or records that shed any light upon his actual diagnosis and prognosis, or upon his ability or alleged inability to work and earn money. Instead, the SSD award letter only reflects in summary fashion that defendant is presently entitled to receive $1136 per month in SSD benefits as a result of a disability. Further, there is no evidence that defendant has ever previously supplied plaintiff with an authorization form enabling her to obtain copies of the defendant's SSD records directly from the SSA for scrutiny in this case.

By contrast, in *Golian,* the SSD recipient did not rely solely and exclusively upon a copy of an SSD award letter to prove her case. Rather, she specifically offered the court corroborating records detailing her multiple alleged medical issues and conditions. *Golian, supra,* 344 *N.J.Super.* at 340, 781 *A.*2d 1112. Further, plaintiff provided evidence of twenty-one hospitalizations she incurred during the marriage, as well as twice-a-week visits for mental health treatment "to which defendant took her for two years." *Id.* at 339, 781 *A.*2d 1112. Still further, the plaintiff had previously provided the defendant with a court-ordered, signed authorization form giving the defendant access to her SSA file, thereby enabling him to scrutinize the underlying medical basis for the award during discovery. *Id.* at 342, 781 *A.*2d 1112. Accordingly, *Golian* in no way stands for the proposition that the only evidence one needs to prove an inability to work is the SSD award letter itself.

Another distinguishing point in *Golian* is that the court did not render its decision solely on the basis of motion papers and certifications. Rather, the decision reflects that there was a hearing with admission of evidence, testimony, and implicitly, opportunities for cross-examination. *Id.* at 339–40, 781 *A.*2d 1112. In the present case, however, defendant seeks a reduction and termination of child support based upon motion papers.

Yet another important factor distinguishing *Golian* from the present case is that in *Golian,* the non-disabled husband was challenging his wife's disability *after he had actively assisted her in qualifying for SSD benefits in the first place.* So significant was this point that the *Golian* court twice emphasized same in its opinion. First, the court noted that the defendant had previously assisted the plaintiff in applying for disability benefits while transporting her to required conferences and hearings, *Id.* at 339, 781 *A.*2d 1112. Second, the court again reiterated that the defendant had assisted the plaintiff in obtaining the SSD award in question. *Id.* at 342, 781 *A.*2d 1112. Further, the *Golian* court explicitly observed that the defendant not only played an active role in helping his wife qualify for SSD, but thereafter utilized the SSD funds to help pay his own joint obligations while the parties lived together. *Id.* at 339, 781 *A.*2d 1112.

Accordingly, the *Golian* court was clearly dealing with implicit concerns regarding equitable estoppel and fundamental fairness. The question was whether the court should permit a divorce litigant to come into a court of equity and challenge his or her spouse's disability after (a) having previously assisted that spouse in obtaining SSD status, and (b) having previously spent the SSD funds during the marriage.

In the present case, no such estoppel issues even remotely exist. It is undisputed that defendant did not even apply for SSD benefits until after the parties separated and divorced. There is no allegation that plaintiff ever assisted defendant in obtaining the SSD award, or that she played any role at all in his application process. Nor did she financially receive and spend any of defendant's SSD proceeds during the marriage.

■ In addition to these distinctions, there is another extremely relevant legal issue, which was not raised in *Golian,* but which is nonetheless critical to an equitable analysis and resolution of the present case. Specifically, even if a party is declared disabled by the SSA and receives an SSD award, that award cannot automatically be interpreted by the family court as a finding by the SSA

that the party cannot work at all. Logically, such a blanket interpretation may in some cases constitute an overreading of an SSD award in a manner that is inconsistent with the SSA's own rules and definition of "disability."

◼ Simply put, the SSA does not require a disabled person to make zero income in order to qualify for SSD benefits. Rather, the SSA generally permits a disabled person to earn a maximum amount of income each month without losing his or her eligibility for SSD funds. The SSA only requires that one cannot engage in a "substantial gainful activity" (SGA) in order to qualify for SSD funds.[3] In order to determine whether an employee is performing "substantial gainful activity," the SSA ordinarily considers whether the claimant's wages generated from work activity exceed a financial threshold. *See* 20 *C.F.R.* § 404.1574(b)(2). Wages under this maximum are generally not considered substantial gainful activity for purposes of SSD analysis. *See* 20 *C.F.R.* § 404.1574(b)(3)(i).

In 1999, the SSA established a maximum earning threshold of $700 per month, which has generally been adjusted and increased on an annual basis in order to account for wage growth in accordance with the national average wage index. *See* 20 *C.F.R.* § 404.1574(b)(2)(ii)(B). As of 2012, the monthly SGA for non-blind individuals is $1010 per month, and for blind individuals it is $1690 per month.[4]

---

[3] Under SSA regulations, a claimant is under a disability if he or she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 *U.S.C.* § 423(d)(1)(A). To determine disability status, the SSA utilizes a five-step sequential evaluation. 20 *C.F.R.* § 404.1520(a)(4). The first step of the evaluation requires a claimant to show that he or she is not engaged in substantial gainful activity. 20 *C.F.R.* § 404.1520(a)(4)(i). A claimant who is performing substantial gainful activity is not disabled. 20 *C.F.R.* § 404.1520(b).

[4] The SSA maintains an updated website which supplies updated calculations for SGA thresholds on an annual basis. *See http://www.ssa.gov/oact/cola/sga.*

Presently, a non-blind person who is disabled and collecting monthly SSD benefits may generally still work and earn up to an additional $1010 per month in wages without losing his or her disabled status and financial benefits. This is a very relevant financial point in this case. While an extra $1010 per month might not be considered to be "significant gainful activity" under SSA regulations, such extra income can potentially be a vital financial resource for custodial parents and children in low income and economically challenged households. The significance grows even greater when the custodial parent is owed substantial child support arrears from the non-custodial parent and is entitled to repayment of same as rapidly as possible.

In the present case, the custodial parent herself only earns an imputed income of $346 per week. Defendant's child support arrears are in excess of $90,000, reflecting the economic reality that plaintiff has essentially gone years without regularly receiving child support from defendant. Therefore, if defendant can actually earn an additional $1010 per month on top of his SSD benefits, which equates to an extra $13,120 per year, these extra funds can be used to pay any ongoing child support obligation that may exist, and/or to help expedite repayment of the substantial child support arrearage obligation owed to plaintiff.

 Certainly, there are individuals whose disabilities are so severe that they cannot work and earn any money at all, even below the $1010 SGA threshold. However, there are other SSD recipients who do in fact have an ability to work part-time and earn at least some additional funds up to the SGA threshold without losing their disabled status. There is therefore no rational basis for a court to automatically conclude that every single SSD recipient is completely unable to work or earn any income at

html (last visited March 9, 2012) ("The monthly SGA amount for statutorily blind individuals for 2012 is $1690. For non-blind individuals, the monthly SGA amount for 2012 is $1010."). See also www.ssa.gov/ssi/text-disable-ussi.htm (last visited March 9, 2012) ("Understanding Supplemental Security Income, if you are Disabled or Blind," 2012 edition).

all. The inquiry as to whether an individual can or cannot work to earn additional, under-SGA income must be a fact-specific one.

A related issue concerns the burden of proof. The court concludes that if a child support obligor receives SSD benefits and claims that he can make no money at all, even below the SSA's permissible SGA threshold, then the burden of proving this claim logically remains with the obligor and does not shift to the other party. Reason and common sense mandate this conclusion, since by definition an SSD award does not automatically constitute proof of inability to earn under-threshold income. Rather, the obligor must supply supplemental, corroborating evidence of a complete inability to work, such as substantiating medical reports and records, et cetera.

This logic is consistent with the burden of proof the SSA itself places upon an allegedly disabled claimant in a social security disability proceeding. As stated by the U.S. Supreme Court in *Bowen v. Yuckert*, 482 *U.S.* 137, 146, n. 5, 107 *S.Ct.* 2287, 2294 n. 5, 96 *L.Ed.*2d 119, n. 5 (1987), "(i)t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Further, this very concept is cited and directly incorporated into the Social Security Disability rules and regulations, *See Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process; Incorporation of "Special Profile" into Regulations,* 68 *Fed.Reg.* 51155 (Aug. 26, 2003). Still further, New Jersey family courts have in other contexts firmly recognized the equitable principle that when evidence is primarily in the hands of one party, the court may impose a burden of proof upon that party to supply such evidence. *See Ozolins v. Ozolins*, 308 *N.J.Super.* 243, 248–49, 705 *A.*2d 1230 (App.Div.1998).[5]

---

[5] In *Ozolins,* the court ordered the shifting the burden of proof in a support modification application to an alimony recipient to demonstrate that she did not have a shared economic relationship with her live-in paramour as "it would be unreasonable to place the burden of proof on a party not having access to the evidence necessary to support that burden of proof." 308 *N.J.Super.* at 248–49,

■ Accordingly, in a family court support proceeding, the burden of proof remains upon an SSD recipient to prove that he or she cannot earn supplemental income under SGA limits, is presently $1010 per month for a non-blind individual. In the present case, if defendant can in fact earn up to an extra $1010 per month to supplement his SSD benefits, this averages to an extra $233 per week in funds that may be available to help support any unemancipated child of the parties and/or help repay the existing child support arrears.

■ New Jersey family law expressly recognizes the equitable concept of income imputation. A court may impute income to a non-custodial parent when he or she is voluntarily unemployed or underemployed without just cause. Child Support Guidelines, Pressler & Verniero, *Current N.J. Court Rules*, Appendix IX–A to *R.* 5:6A, n. 12 at 2504 (2012); *Caplan v. Caplan*, 182 *N.J.* 250, 268, 864 *A.*2d 1108 (2005); *Ibrahim v. Aziz*, 402 *N.J.Super.* 205, 211, 953 *A.*2d 508 (App.Div.2008). When information regarding a parent's prior earnings is unavailable, a court may at the very least impute income based upon minimum wage. *See* Pressler & Verniero, *supra, Appendix* IX–A to *R.* 5:6A n. 12 (c) at 2505.

■ Applying similar equitable logic to the case at bar, the court is confronted with a noncustodial parent who qualifies for SSD benefits, but who to date has supplied the court with no corroborating evidence as to his alleged inability to earn at least up to $1010 per month. Further, he has supplied no information about his prior earnings, work experience, education, or training, reflecting upon his ability to work. Still further, he has not supplied any evidence of any attempts to earn under SGA-income, or any medical verification that he is simply unable to ever work and earn money in any capacity at all. Instead, he submits only his SSD award letter. Thus, defendant presently falls short in

---

705 *A.*2d 1230 (citing *Frantz v. Frantz,* 256 *N.J.Super.* 90, 93, 606 *A.*2d 423 (Ch. Div.1992)).

meeting the burden of proof of addressing these important points in the context of a child support proceeding. While defendant has established that the SSA has deemed him disabled, there is insufficient evidence at this time to simply conclude that he can no longer pay child support or earn any additional money to pay down his arrears.

 In reconciling (a) the policy enunciated by *Golian* regarding SSD recipients, and (b) the policy in New Jersey to enforce child support and collection of arrears, the court concludes as follows:

1) If a child support obligor incurs a disability and qualifies for SSD benefits under an SSA ruling, the obligor generally must supply more evidence than simply the SSD award letter itself to demonstrate the nature and extent of the disability;

2) If the obligor produces the SSD letter along with sufficient corroborating medical evidence regarding the disability, then the production of such evidence may shift the burden of proof to the other party to demonstrate that the obligor is not disabled and can earn over the SGA threshold of income;

3) Even if the obligor, through production of the SSD award letter and corroborating evidence, successfully shifts the burden of proof to the other party to prove that the obligor can earn over SGA limits, the burden of proof remains on the obligor to prove any claim that he or she cannot earn at least under-SGA income. If he or she fails to meet that burden of proof, a family court may potentially impute income to the obligor up to the SGA maximum threshold.

Thus far, the defendant has produced only an SSD award letter and no other medical evidence of any kind. While the SSD letter is certainly relevant evidence under *Golian*, it is premature at best to attempt to reach conclusions about the nature of defendant's disability and his capacity to work and pay any amount of child support. In order to further address these issues and concerns, the court schedules this matter for a hearing to determine what if any additional income should be imputed to defendant for purposes of paying child support and arrears. The court directs that at least twenty days before the hearing defendant shall further produce copies of written confirmation via medical affidavits/certifications/reports from health care providers setting forth defendant's diagnosis, prognosis, and confirmation of the alleged inability to work. Defendant shall further supply a certification of all work activity in which he has been involved over the past decade.

If the court determines at the conclusion of the hearing that defendant is in fact completely unable to work in any capacity at all (even below the SGA threshold permitted by the SSA), then the court may retroactively credit defendant for any child support overpayment he has made during the pendency of this litigation, by applying such credit against the substantial child support arrears he presently owes plaintiff.