**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5990-17T2

DEANA CALLAHAM,

     Plaintiff-Respondent,

v.

EDWARD CALLAHAM,

     Defendant-Appellant.

_____

Submitted April 29, 2019 – Decided June 10, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1444-11.

Callagy Law, PC, attorneys for appellant (Brian P. McCann, on the brief).

Respondent has not filed a brief.

PER CURIAM

     In this post-judgment matrimonial matter, defendant ex-husband appeals

from a June 8, 2018 Family Part order, denying his motion to reduce his support

obligations, and an August 7, 2018 order, denying his motion for reconsideration. Defendant contends he established a prima facie showing of changed circumstances, requiring further proceedings, and the trial court abused its discretion in ruling otherwise. Having considered the record in light of the applicable legal principles, we affirm.

In June 2012, an amended Final Dual Judgment of Divorce (JOD) was entered requiring defendant to pay $560 per week in limited durational alimony to plaintiff ex-wife for four years, commencing when plaintiff moved out of the former marital residence (FMR), and $690 per week in child support for the parties' three minor children until emancipation. These amounts were calculated using imputed annual income of $150,000 for defendant and $61,500 for plaintiff. Thereafter, the parties engaged in extensive post-judgment trial court and appellate litigation, in which defendant primarily challenged his imputed income and ability to pay, and plaintiff primarily sought enforcement of defendant's support obligations.

In an unpublished opinion, we affirmed the JOD support awards and upheld the income imputed to defendant based on defendant's "near constant employment in various [information technology (IT)] positions starting in August 2009[.]" Callaham v. Callaham, A-5757-11 (App. Div. Aug. 21, 2014)

(slip op. at 32).  In our decision, we deferred to the trial court's credibility findings whereby "the court did not 'accept the [d]efendant's testimony as to his financial situation.'"  Id. at 14.  Post-judgment motion practice continued unabated, and on September 9, 2014, defendant moved to modify his support obligations, arguing he had suffered a significant change in circumstances since the entry of the JOD.  Finding that defendant made a prima facie showing of changed circumstances, the court conducted a plenary hearing, and, on January 4, 2016, reduced defendant's child support to $321 per week, effective the date defendant filed his motion,[1] and reduced defendant's alimony obligation to $257 per week, commencing upon plaintiff leaving the FMR, which was in foreclosure.

In the written decision accompanying the January 4, 2016 order, the court accepted defendant's evidence that his income had been reduced as a result of his unemployment and incarceration in 2012 on a child support enforcement warrant, and his subsequent employment in 2013 as a technician for Valvoline earning $14 per hour.  However, the court rejected defendant's testimony that he had made a good faith and diligent search for better employment, finding it

---

[1]  Defendant remained responsible for the child support arrears that had accumulated from the time the JOD was entered.

"lacked credibility." The court also "place[d] little weight on defendant's claims that his medical issues have affected his ability to obtain employment[,]" because the claims were unsupported by "expert testimony or supporting documentation." Rather, based on defendant's testimony "that he currently work[ed] less than [forty] hours per week" and "turned down an assistant manager position at Valvoline[] . . . , resulting in his demotion to technician," the court determined that defendant was underemployed,[2] and imputed an annual salary of $72,000, which was "the earning capacity of a manager at Valvoline."

After moving out of the FMR, on July 18, 2017, plaintiff moved for enforcement of defendant's alimony obligation as well as other relief not pertinent to this appeal. Defendant opposed plaintiff's motion and cross-moved to terminate his alimony obligation and recalculate his child support obligation due to disability or changed circumstances. In his supporting certification, defendant averred he had "severe mental health issues including [post-traumatic stress disorder (PTSD)], paranoia, depression[,] and bi-polar disorder," and was "unable to work in any significant capacity due to [his] disability." According to defendant, "[he] filed a claim for permanent disability, . . . attended the Social

---

[2] Following a lengthy ability-to-pay hearing, a different judge had likewise determined that defendant was underemployed.

4

Security Administration [(SSA)] Disability Hearing on September 5, 2017[,]" and was awaiting a decision.

In the alternative, defendant certified that he had no ability to earn the $72,000 annual salary imputed to him in the January 4, 2016 order. He attached his 2015 and 2016 "Federal and State income tax returns" showing he earned a total of $9216 in 2015 and $9035 in 2016. He also attached his last two paystubs from Valvoline showing a "total year-to-date gross income" of $11,054.20. Defendant averred he was "completely destitute," "[had] no assets and a magnitude of debt[,]" was "currently on Medicaid," and relied "on the kindness of a few friends." Despite being "virtually unemployable," and "only hav[ing] a high school diploma[,]" defendant indicated he "continued to search for better jobs" and attached "examples of [his] continuous job search and online applications." According to defendant, "[i]n stark contrast . . . , [p]laintiff has been able to achieve financial success and has vastly improved her financial situation over the past few years."

On November 15, 2017, the court denied without prejudice defendant's cross-motion to terminate alimony and recalculate child support. On the other hand, the court granted plaintiff's motion to enforce defendant's alimony obligation, but suspended collection until February 1, 2018.

A-5990-17T2

Upon receiving the Administrative Law Judge's (ALJ) decision on his SSA disability application,[3] on April 27 and May 4, 2018, defendant again moved to decrease his support obligations and vacate his arrears based on changed circumstances or, in the alternative, based on the ALJ's findings and the testimony of the vocational expert adduced at the disability hearing. In his supporting certification, defendant relied on the vocational expert's testimony to show that he could "only work a minimal job because of [his] disabilities." Defendant also accused plaintiff of engaging in various forms of fraud and misconduct throughout the divorce proceedings, including "submitting a forged tax return," which resulted in the court "imput[ing] a large fictitious amount of income" to him in the JOD. Defendant's May 4, 2018 motion mirrored his April 27, 2018 motion, but added a claim that plaintiff was cohabitating with her fiancé as additional evidence of changed circumstances.

In the SSA decision, the ALJ concluded that defendant was not disabled within the meaning of the SSA "[b]ased on the testimony of the vocational expert, . . . [defendant's] age, education, work experience, and residual functional capacity, [and defendant's] . . . capab[ility] of making a successful adjustment to other work that exists in significant numbers in the national

---

[3] The decision was issued on November 28, 2017.

economy." According to the ALJ, while "[t]he record reveal[ed] diagnoses of bipolar disorder, not otherwise specified, chronic PTSD[,] and depressed mood," "it [did] not support [defendant's] allegations of disabling functional limitations" and "[defendant's] statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms [were] not entirely consistent with the medical . . . and other evidence in the record."

Nonetheless, based on defendant's "assessed residual functional capacity" and "persuasive" testimony from the vocational expert, the ALJ concluded that defendant was "unable to perform" his "past relevant work as a programmer-analyst." However, "[a]fter careful consideration of the entire record," the ALJ determined that:

> [Defendant] ha[d] the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: [defendant] [was] able to understand, remember[,] and carry out simple instructions with only occasional changes to essential job functions; [was] able to make simple work-related decisions[,] and must not have interaction with the general public.[4]

---

4 The ALJ attributed the prohibition on "interaction with the general public" to "according extreme deference to [defendant's] subjective reports of anger outbursts and irrational behavior."

In determining the extent to which these "non-exertional limitations" eroded the occupational base of unskilled work at all exertional levels, the ALJ accepted the testimony of the vocational expert that given defendant's age, education, work experience, and residual functional capacity, defendant would be able to perform the requirements of the following representative occupations: "hand packager," "cleaner," and "mail clerk[.]"

Plaintiff opposed defendant's motions and cross-moved for enforcement of the prior orders. In her supporting certification, plaintiff noted there was no finding that defendant was disabled, and pointed out that the vocational expert's testimony "should not be counted as evidence" because "complete documents" were not provided. Plaintiff also denied defendant's accusations of misconduct and cohabitation. In a reply certification, defendant reiterated that despite his diligent efforts "to obtain better employment as evidence[d] by [his] past job searches," the vocational expert agreed that "[his] disability prevent[ed] [him] from doing any skilled work." Further, defendant asserted that based on the same proofs, a different judge had reduced his child support for another child born from a prior relationship.

Following oral argument, on June 8, 2018, the court denied defendant's motion in its entirety. In an oral decision, the court acknowledged its discretion

to modify support obligations but noted that the burden was on the party seeking modification to make a prima facie showing of changed circumstances before "[t]he non-moving party's ability to pay . . . [became] a factor for the [c]ourt to consider." See Lepis v. Lepis, 83 N.J. 139 (1980). Moreover, according to the court, "[w]hen a parent without just cause is voluntarily unemployed or underemployed, income may be imputed to that parent to provide for the child's needs." See Caplan v. Caplan, 182 N.J. 250, 268 (2005). Further, the court explained that "[b]y seeking to eliminate his alimony obligation, . . . defendant [was] conceptually seeking to change the duration of his obligation from four years to what would ultimately be four months[,]" which, under N.J.S.A. 2A:34-23(c), required defendant to "demonstrate unusual circumstances" to succeed in such an application.

Applying these legal principles to defendant's disability arguments,[5] the court stated:

> [D]efendant . . . claims that he is disabled and that a federal vocational expert concluded that he can only work a minimal job due to his disability. First of all, . . . defendant provided only two of ten pages

---

[5] The court rejected defendant's "arguments pertaining to plaintiff's alleged forgery or fraud" as an attempt "to relitigate" the underlying JOD, which was affirmed on appeal, and dismissed defendant's "claim that plaintiff [was] cohabiting with her fiancé" as an unsupported "bald assertion."

comprising the [ALJ's] decision in the [SSA] proceeding. . . .

Notably, . . . the [ALJ] determined that . . . defendant is not disabled. Conspicuously absent from this motion is any medical evidence to support . . . defendant's claim that he [is] disabled or the report of the vocational expert. In any event, based upon the limited information provided, . . . defendant clearly mischaracterizes the expert's statements.

The [ALJ] concluded that . . . defendant is unable to perform his prior work as a programmer analyst due to non-exertional limitations and the expert purportedly opined that . . . defendant is capable of working in other positions that are prevalent in the national economy such as a hand packager, industrial cleaner[,] or mail clerk, all of which are unskilled positions. This was sufficient to satisfy the [ALJ] that . . . defendant is able to maintain some type of gainful employment and is therefore not disabled for [SSA] purposes. There is no indication that any information was provided during that hearing as to defendant's current position [as a Valvoline technician] . . . or the assistant manager position at Valvoline, which he turned down.

It does not follow that . . . defendant's ability to work is therefore limited to these three positions that are referenced in the opinion. Therefore, the [c]ourt accepts the [SSA's] conclusions that . . . defendant is not disabled. The purported expert testimony or report is missing and in any event, is unavailing, as . . . defendant is clearly not disabled. The [ailments] of which he complains; specifically, attention deficit hyperactivity disorder, [PTSD,] and bipolar disorder, are not new and existed prior to the divorce as reflected in the Bergen Family Center [r]eport of June 3, 2011[,] and [PTSD] was, according to . . . defendant, caused

10

during his military service . . . prior to the entry of the [JOD] . . . .

Next, the court addressed defendant's reliance on the reduction of child support in an unrelated case:

> Next, defendant argues that he [is] entitled to a modification of his child support because [another judge] recalculated defendant's support application for the benefit of his older son from a prior relationship on May 10, 2018. The [c]ourt has no information regarding the basis for [the other judge's] decision and in any event, is not bound by that decision of an equal court.
>
> Further, while this is no criticism [of the other judge], clearly she was not privy to th[e] litigious history in this matter including the trial and at least . . . two[] post[-]judgment [p]lenary [h]earings in which . . . defendant's earnings and income have been scrutinized by other Superior Court [j]udges and the Appellate Division.

The court concluded that "based upon what has been presented,"

> defendant has failed to make a prima facie showing of changed circumstances since the most recent alimony and child support orders were entered on January [4], 2016. At that time, [the court] found that . . . defendant was underemployed and imputed an income to him of $72,000. That determination cannot be disturbed absent a showing of changed circumstances.
>
> Further, on November 15, 2017, this [c]ourt found that he was on pace to earn and in fact did earn more than he had in 2013. . . . [D]efendant's income tax returns reflect that he earned $14,248 in 2017,

11

which is a substantial increase in his previous earnings of [$9035] in 2016 and [$9216] in 2015. Moreover, based upon the three [paystubs] defendant provided from January and February of this year, . . . defendant's gross earnings during those three weeks average $506.53. If defendant continues earning at this pace, he will earn approximately $26,340 in 2018. So contrary to . . . defendant's assertions and despite his claimed disabilities, his financial circumstances have continued to improve . . . .

On June 22, 2018, defendant moved for reconsideration. In support, defendant supplied the ALJ's opinion in its entirety and requested that the court recalculate the imputed income based on pay scales for each of the three positions identified by the vocational expert. To that end, defendant submitted documentation showing that a hand packager earned an average salary of $10.98 per hour, a cleaner earned an average salary of $11.11 per hour, and a mailroom clerk earned an average salary of $12.60 per hour.

On August 7, 2018, after applying settled legal principles, the court denied defendant's motion, "find[ing] that the June 8, 2018 decision was [not] 'based upon a palpably incorrect or irrational basis[,]'" and that "[d]efendant's mere allegation that '[the court] may have overlooked or misread some important information in the [ALJ's] findings'" was "not sufficiently specific for this [c]ourt to conclude that it failed to appreciate the significance of any of the information provided[,]" "both at the time of the motion hearing and now." See

R. 4:49-2 (providing that a reconsideration motion must "state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred").

In its written statement of reasons, the court stated:

> Defendant asks that "this [c]ourt . . . [r]econsider the . . . [SSA] finding in its entirety." Defendant provides wage information from the Department of Labor website and asks the [c]ourt to "recalculate the imputed income to [him] based off of actual income and proofs aligned with . . . the [vocational expert's] [f]inding. . . ." As to the latter, [d]efendant did not ask that the [c]ourt impute income to him based upon the findings of the vocational expert in either of the motions he filed that were heard on June 8, 2018. To the contrary, [d]efendant argued that the federal vocational expert's testimony supported that his "actual income" was essentially the maximum he was capable of earning. None of [d]efendant's requested relief sought an imputation of income, and he is not entitled to raise new arguments in a motion for reconsideration.

Next, the court pointed out that previously, "[d]efendant provided only two . . . of the ten . . . pages of the [ALJ's] decision" but "now provides the written decision . . . in its entirety." The court continued:

> Notably this decision is dated November 28, 2017[,] and, as evidenced by [d]efendant's provision of some of its contents, it was available to him at the time he filed his motions on April 27 and May 4, 2018. Nevertheless, this [c]ourt has reviewed the [ALJ's]

13

decision in its entirety, paying particular attention to the information provided in the eight . . . pages not annexed to the original motion papers, and finds no basis to disturb the June 8, 2018 [o]rder.

To support its decision, the court noted that the ALJ found that defendant's mental impairments were "not 'severe enough to prevent an adult from doing any gainful activity regardless of his age, education, or work experience.'" Further, according to the court, the ALJ "pointed to several inconsistencies in [d]efendant's testimony compared to his paperwork[,]" and the ALJ limited defendant's "interaction with the general public" based on defendant's "subjective reports of anger outbursts and irrational behavior[,]" rather than any "mental work limitations[.]" Indeed, the ALJ found that "mental work limitations" were not supported by "the objective evidence of record[.]"

As to defendant's job at Valvoline, the court explained:

> The [ALJ] makes a fleeting reference to [d]efendant's "part-time job," stating only that such employment "evidences his ability to sustain attention and concentration sufficient to perform the requirements of the job." The [c]ourt cannot determine from the [ALJ's] decision the extent to which [d]efendant's current employment and related responsibilities were raised in the testimony at the hearing or set forth in the record, and these materials have not been provided to this [c]ourt. There is likewise nothing in the decision to suggest that the [ALJ] was apprised of the promotion offered to [d]efendant, which he declined.

14

The court stated that after reviewing the ALJ's decision in its entirety, rather than changing its June 8, 2018 decision,

> [t]o the contrary, the [ALJ's] observations regarding the inconsistency of [d]efendant's claimed symptoms versus the objective record further bolster this [c]ourt's conclusion that [d]efendant is not limited to the three . . . jobs set forth by the [ALJ]. The [ALJ] was able to afford "extreme deference" to [d]efendant's self-reports of his limitations while nevertheless concluding that, at a minimum, [d]efendant had several viable options for gainful employment and [was] therefore not disabled for [SSA] purposes.
>
> Further, findings regarding employability in the context of [SSA] are not binding upon this [c]ourt. The law applicable to those proceedings and the standards that this [c]ourt must apply are distinct, as are the respective objectives of the proceedings. The stakes are likewise incomparable as this [c]ourt must concern itself, first and foremost, with the support and well-being of children. Specifically, this [c]ourt must determine the level of support to which children are entitled based upon their parents' actual incomes or their earning capacities. The [SSA], however, is concerned with determining whether individuals— primarily adults—are entitled to Social Security benefits. In this regard, the [c]ourt must again emphasize that the [ALJ] ultimately concluded, as a result of the findings on which [d]efendant so heavily relies, that [d]efendant is not disabled.

The court entered a memorializing order and this appeal followed.

The scope of our review of a Family Part order is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Unless it lacks support or is inconsistent with

the substantial, credible evidence in the record, <u>Rova Farms Resort, Inc. v. Investors Insurance Company</u>, 65 N.J. 474, 483-84 (1974), we generally defer to the Family Part's fact-finding because of the court's "special expertise" in family matters. <u>N.J. Div. of Youth and Family Servs. v. F.M.</u>, 211 N.J. 420, 448 (2012). We likewise defer to the Family Part and "give due recognition to the wide discretion[,] which our law rightly affords to the trial judges who deal with" motions to modify alimony and child support awards. <u>Spangenberg v. Kolakowski</u>, 442 N.J. Super. 529, 535-36 (App. Div. 2015) (alteration in original) (quoting <u>Martindell v. Martindell</u>, 21 N.J. 341, 355 (1956)).

While we owe no special deference to the "trial court's interpretation of the law and the legal consequences that flow from established facts[,]" <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995), we

> "should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice" or when we determine the court has palpably abused its discretion.
>
> [<u>Parish v. Parish</u>, 412 N.J. Super. 39, 47 (App. Div. 2010) (first alteration in original) (quoting <u>Cesare</u>, 154 N.J. at 412).]

16

Similarly, our standard of review on a motion for reconsideration is deferential. "Motions for reconsideration are governed by [Rule] 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion[.]" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration

> should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

"In short, a motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015). It "does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion." Ibid. Thus, we will not disturb a trial judge's denial of a motion for reconsideration

17

absent a clear abuse of discretion. Pitney Bowes Bank, 440 N.J. Super. at 382. An "abuse of discretion only arises on demonstration of 'manifest error or injustice,'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Here, we discern no abuse of discretion. On the contrary, the court's decision complied with settled principles applicable to modification motions. Indeed, a party who seeks modification of an alimony or child support award is required "to prove 'changed circumstances,'" Spangenberg, 442 N.J. Super. at 536 (quoting Lepis, 83 N.J. at 157), and "as would warrant relief from the support or maintenance provisions involved." Lepis, 83 N.J. at 157. "[T]he changed-circumstances determination must be made by comparing the parties' financial circumstances at the time the motion for relief is made with the circumstances which formed the basis for the last order fixing support obligations." Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990). "If that showing is made, . . . the judge then determines whether the changed

circumstances justify modification" and "[a] plenary hearing may be necessary to adjudicate the matter if there are genuine issues of material fact." Dorfman v. Dorfman, 315 N.J. Super. 511, 515 (App. Div. 1998).

Here, contrary to defendant's argument, he failed to make the requisite showing of changed circumstances to justify further proceedings. Rather, the court determined there was no basis to change the $72,000 annual salary imputed to him in 2016 due to his underemployment because "despite his claimed disabilities, his financial circumstances have continued to improve[.]" The court's determination is supported by substantial, credible evidence in the record.

In this context, trial courts are obliged to consider the "potential earning capacity of an individual, not his or her actual income[.]" Caplan, 182 N.J. at 268 (quoting Halliwell v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999)). When a parent is "voluntarily unemployed or underemployed" "without just cause," income should be imputed to "promot[e] a fair and just allocation of the support obligation" of both parents. Id. at 268-69. However, there are no bright-line rules that govern the imputation of income. Instead, "[i]mputation of income is a discretionary matter not capable of precise or exact determination[,] but rather requiring a trial judge to realistically appraise capacity to earn and job

availability." Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004). Thus, when a party appeals a decision to impute or not impute income, we will only disturb the result if "the underlying findings are inconsistent with or unsupported by competent evidence." Id. at 474-75. Such is not the case here.

Nonetheless, relying on Golian v. Golian, 344 N.J. Super. 337 (App. Div. 2001),[6] defendant argues that "[w]hile [the] SSA did not find [him] disabled, the adjudication and findings . . . undoubtedly established a prima facie showing that [d]efendant is unable to earn the $72,000[] that was imputed to him in [2016]" because "[a]ccording to the Occupational Employment Statistics," a "hand packager[,]" a "cleaner[,]" and a "mail clerk[,]" earn a median gross annual income of $23,430, $22,850, and $29,620, respectively. Acknowledging that "the SSA's findings and conclusions are not 'binding,'" defendant contends "they are entitled to significant weight and form the basis for a prima facie showing of changed circumstances." Further, defendant asserts that "despite 'accepting' the SSA conclusions," the court "never [drew] the connection that

---

[6] Defendant also relies on Gilligan v. Gilligan, 428 N.J. Super. 69 (Ch. Div. 2012). However, as a Chancery Division decision, Gilligan is not binding on this court. See Gormley v. Wood-El, 218 N.J. 72, 114 (2014) (noting that "[t]he decisional law of the Appellate Division is not only binding on our trial courts, but is an expression of the law of our State unless the New Jersey Supreme Court says otherwise").

the SSA findings and conclusions confirm that [d]efendant is not capable of earning $72,000 gross, per year[,]" and "never reconcile[d] its conclusion that [d]efendant could be employed as a manager at Valvoline . . . with its acceptance of the SSA findings."

In Golian, the plaintiff appealed from the portions of a JOD "pertaining to certain financial matters, which were predicated on imputation of income to her." 344 N.J. Super. at 338. Despite acknowledging the "plaintiff's SSA disability status," and receipt of "disability benefits" from the SSA, the trial court "determined that plaintiff had the burden of proving her inability to work through medical evidence, and since plaintiff presented no such evidence she failed to meet her burden." Ibid. We reversed, holding that "the SSA adjudication of disability constitutes a prima facie showing that plaintiff is disabled, and therefore unable to be gainfully employed, and the burden shifts to defendant to refute that presumption." Id. at 342-43. We remanded "for further proceedings, in which the trial judge shall consider such additional evidence which defendant may present to attempt to overcome this presumption[,]" after which "the trial court shall evaluate" and "determine anew whether income should be imputed to plaintiff." Id. at 343.

Contrary to Golian, here, the SSA decision determined defendant was not disabled. "A party asserting inability to work due to disability bears the burden of proving the disability. Ordinarily, then, that party must produce evidence to carry that burden." Id. at 341. Here, defendant failed to carry his burden. In fact, defendant failed to provide any supporting medical documentation to the court, prompting the court to observe that "[c]onspicuously absent from [defendant's] motion is any medical evidence to support . . . defendant's claim that [he is] disabled." Thus, unlike Golian, defendant presented no prima facie showing that he was disabled, to shift the burden to plaintiff to refute that presumption.

Further, defendant argues that "any fault attributed to [him] for failing to provide the complete SSA adjudication with the initial motion(s) was cured on reconsideration." However, reconsideration is properly denied when the application is based upon unraised facts known to the moving party prior to the entry of the challenged order and "cannot be used to expand the record and reargue a motion." Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Rather, "[a] motion for reconsideration is designed to seek review of an order based on the evidence before the court on the initial

motion, [Rule] 1:7-4, not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Ibid.

Indeed, in Palombi, we held that the trial court was not even "required to engage in the reconsideration process" when appellant "sought reconsideration of [an earlier] order, which decided a motion for child support that he had not opposed." 414 N.J. Super. at 289. We determined appellant "failed to make the showing required to initiate the reconsideration process" because "[t]he assertions in his certification and the documents submitted, . . . constituted facts known to him prior to the entry of the order and were not an appropriate basis for reconsideration." Ibid. Likewise, here, defendant's submission of the complete SSA decision, which was known to him almost seven months prior to the entry of the June 8, 2018 order, failed to satisfy the threshold requirement of demonstrating that the court acted in an arbitrary, capricious, or unreasonable manner, and was fatal to his reconsideration motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5990-17T2