**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0344-17T2

E.K.,[1]

    Plaintiff-Respondent,

v.

S.A.,

    Defendant-Appellant.

_____

Submitted September 18, 2019 – Decided October 21, 2019

Before Judges Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0387-09.

Keith Winters & Wenning, LLC, attorneys for appellant (Brian D. Winters, on the brief).

Adinolfi, Molotsky, Burick & Falkenstein PA, attorneys for respondent (Drew A. Molotsky, on the brief).

---

[1] We use initials to protect privacy interests and to maintain confidentiality. See R. 1:38-3(d)(1).

PER CURIAM

In this post-judgment matrimonial matter, defendant (ex-husband) appeals from provisions of an August 24, 2017 Family Part order, imputing income to him, denying his request to vacate child support arrears and cease all enforcement measures, denying custody and reunification therapy with his then un-emancipated children, and awarding counsel fees to plaintiff (ex-wife). Defendant raises the following points for our consideration:

> POINT I[2]: THE COURT ERRED IN IMPUTING INCOME TO [DEFENDANT] NOTWITHSTANDING [DEFENDANT] HAVING BEEN ADJUDICATED TO BE DISABLED BY THE SOCIAL SECURITY ADMINISTRATION, AND/OR WITHOUT THE BENEFIT OF A PLENARY HEARING[.]
>
> POINT II: THE TRIAL COURT ERRED IN FAILING TO VACATE ARREARS AND/OR TO CEASE ALL ENFORCEMENT MEASURES IN CONTRAVENTION OF [BURNS V. EDWARDS, 367 N.J. SUPER. 29 (APP. DIV. 2004)] AND [CRESPO V. CRESPO, 395 N.J. SUPER. 190 (APP. DIV. 2007).]
>
> POINT III: THE TRIAL COURT ERRED IN ASSESSING COUNSEL FEES[.]
>
> POINT IV: THE COURT ERRED IN FAILING TO ORDER REUNIFICATION THERAPY BETWEEN [DEFENDANT] AND THE THEN UNEMANCIPATED CHILDREN[.]

---

[2] We have eliminated the point heading describing the standard of review and renumbered the remaining points accordingly.

A-0344-17T2

We affirm in part, reverse and remand in part, and dismiss the issues pertaining to custody as moot.

We glean the facts from the record. The parties were married in 1990, and divorced in 2009. Five children were born of the marriage, E.A, born August 1991, S.A., born September 1992, Sa.A., born July 1994, I.A., born January 1999, and M.A., born March 2000. The parties entered into a custody and parenting time consent order, as well as stipulations of settlement, all of which were incorporated into their 2009 judgment of divorce (JOD). Pursuant to the terms of the consent order, the parties had joint legal and shared residential custody of the children, with plaintiff designated the primary residential parent. Under the stipulations of settlement, defendant was obligated to pay child support in the amount of $217 per week, based upon imputed income to both defendant and plaintiff of $35,000 and $20,000 per year, respectively, payable through the Probation Department and by wage execution upon defendant's employment.

Thereafter, defendant engaged in extensive post-judgment motion practice, primarily focused on child support and parenting time. Notably, on September 25, 2015, defendant's child support obligation was reduced to $174 per week when the court emancipated E.A. and S.A., and directed defendant to

A-0344-17T2

pay fifty dollars per month towards arrears. Additionally, on September 30, 2016, defendant's motion to compel parenting time or therapeutic reunification with Sa.A., I.A., and M.A. was denied. On March 24, 2017, defendant filed the motion underlying this appeal. Specifically, defendant moved to retroactively terminate child support and vacate all arrears that accrued since September 22, 2013, when he was adjudicated disabled by the Social Security Administration (SSA). Defendant also sought a prohibition against all enforcement measures to collect child support or arrears. Additionally, defendant moved to emancipate Sa.A., to obtain sole custody of the two remaining un-emancipated children, I.A. and M.A., and to obtain a counsel fee award in the event plaintiff opposed his application in bad faith. Plaintiff cross-moved to require defendant to pay a lump sum payment towards arrears, then totaling $37,747.29, and for counsel fees.

In defendant's supporting certification, he stated he obtained supplemental security income (SSI) benefits, "effective September 22, 2013[,]" because he "suffered a debilitating stroke" which left him with "partial paralysis of one side of [his] body." Defendant stated he had other medical conditions, including "cerebral vascular disease, seizure convulsions, hypertension, [and] edema[,]" and "no other source of income." Defendant also sought to emancipate Sa.A.,

4

then twenty-two-years-old, and sought custody of I.A. and M.A., then eighteen and seventeen-years-old, respectively, in order to "rekindle [their] previously warm and loving relationship." In that regard, defendant accused plaintiff of alienating the children's "affections toward [him], so much so [that] they refuse[d] to see . . . or speak with [him,]" as a result of which he had previously sought but was denied reunification therapy.

In opposition, plaintiff "implore[d]" the court to reject defendant's repeated attempts to shirk "his financial obligations" by "refus[ing] to pay . . . child support," "def[ying] court orders," "[lying] to judges" and "probation officers," and "hid[ing] from probation[.]" As to defendant's specific requests, plaintiff consented to emancipating Sa.A., but objected to defendant's request for custody of the un-emancipated children, averring that "[s]ince 2013[,] . . . defendant ha[d] made no attempt to see or contact" the children. Plaintiff also objected to terminating child support and vacating arrears, asserting "[d]efendant ha[d] never worked[,]" and "agreed to pay support . . . at the time of the divorce" despite the fact that he "was[ not] working then either." According to plaintiff, given defendant's "receipt of benefits," "support from his family," and "no expenses" listed on his case information statement (CIS), "[t]he stroke . . . produced no change in his circumstances economically." Further,

5

plaintiff urged the court to impute income to defendant in light of the "questions raised" in the earlier "social security records supplied by . . . [d]efendant" regradring "his alleged inability to work in any capacity."

Following oral argument, the judge entered an order granting in part, and denying in part, the relief requested by defendant. Regarding retroactively terminating child support and vacating arrears, the judge reduced defendant's child support to $101 per week, effective September 22, 2013, until Sa.A.'s emancipation on March 24, 2017. The judge reduced defendant's child support thereafter to forty-six dollars per week, and adjusted the arrears to reflect all modifications. See N.J.S.A. 2A:17-56.23a. The judge also ordered Probation to refrain from levying on or garnishing defendant's monthly SSI benefits, but permitting other sanctions set forth in Rule 5:7-5.

In his written statement of reasons accompanying the August 24, 2017 order, the judge acknowledged that "[t]he adjudication of disability by the SSA" constituted "a substantial change in circumstances warranting review and modification of [d]efendant's child support obligation." The judge also acknowledged that "SSI benefits [could] not be considered in a calculation of child support." Further, according to the judge, "[t]he adjudication . . . constitute[d] a prima facie showing of disability, . . . shifting the burden to

[p]laintiff to refute th[e] presumption." Finding that plaintiff failed "to rebut th[e] presumption," the judge concluded that "[d]efendant's disability render[ed] him incapable of earning $35,000[] per year through gainful employment as imputed in the JOD."

However, the judge pointed out that "although the SSA found [d]efendant sufficiently disabled to award him benefits," the SSA also found "[d]efendant maintained the residual functional capacity to perform some sedentary work[.]" Thus, the judge determined that the "'qualified' finding of disability by the SSA . . . left open the possibility that [defendant] could work in some capacity." In the absence of any supporting "medical documents" submitted by defendant verifying his inability "to work in any significant capacity," the judge "impute[d] minimum wage income to [d]efendant," and used that income, "not the SSI[,]" to calculate his reduced child support obligation, thereby denying defendant's request to terminate his child support obligation altogether. Addressing the remaining issues, the judge denied defendant's request for sole custody of I.A. and M.A. without prejudice, finding no "showing that circumstances have changed such that this would be in the children's best interests[,]" denied without prejudice plaintiff's request for a lump sum payment towards arrears, but granted

7

plaintiff $1500 in counsel fees.  The judge entered a memorializing order and this appeal followed.

Preliminarily, we dismiss as moot defendant's arguments pertaining to custody and reunification therapy with I.A. and M.A. because I.A. and M.A. are currently over eighteen years of age and thus no longer subject to the court's jurisdiction.  "It is firmly established that controversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed[,]" N.J. Div. of Youth & Family Servs. v. W.F., 434 N.J. Super. 288, 297 (App. Div. 2014) (quoting Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993)), and "[m]ootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm."  Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010).

Thus, "'for reasons of judicial economy and restraint, courts will not decide cases in which . . . a judgment cannot grant effective relief . . . ,'" Cinque, 261 N.J. Super. at 243 (quoting Anderson v. Sills, 143 N.J. Super. 432, 437-38 (Ch. Div. 1976)), or in which "orders entered . . . have no continuing adverse consequences[.]"  N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 264 (App. Div. 2009).  Further, the issues raised do not "'involve significant

matters of public policy,'" nor are they "'extremely important, and undoubtedly will recur in cases that are likely to be mooted before adjudication.'" W.F., 434 N.J. Super. at 297 (quoting In re N.N., 146 N.J. 112, 124 (1996)).

Addressing defendant's remaining arguments, we begin with our well-settled standard of review. It is axiomatic that the scope of our review of the Family Part's orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Id. at 413. Thus, "'[a] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record.'" MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

While we owe no special deference to the judge's legal conclusions, Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), "'the factual findings and legal conclusions of the trial judge'" should be left undisturbed unless we are "'convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably

9

abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). Thus, we will only reverse the judge's decision when it is necessary to "'ensure that there is not a denial of justice' because the family court's 'conclusions are [] "clearly mistaken" or "wide of the mark."'" Id. at 48 (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

Turning to the specific legal principles pertinent to this appeal, we are guided by our long standing view that "[t]he obligation to provide child support 'is engrained into our common law, statutory, and rule-based jurisprudence.'" Colca v. Anson, 413 N.J. Super. 405, 414 (App. Div. 2010) (quoting Burns, 367 N.J. Super. at 39). For that reason, "enforcing the parental duty to support children is 'an inherent part of the "best interests of the child" rubric which underlies our family courts.'" Ibid. (quoting Monmouth Cty. Div. of Soc. Servs. for D.M. v. G.D.M., 308 N.J. Super. 83, 88 (Ch. Div. 1997)).

"As a general rule, a parent is obliged to contribute to the basic support needs of an unemancipated child to the extent of the parent's financial ability irrespective of the quality of the relationship between them." Martinetti v. Hickman, 261 N.J. Super. 508, 513 (App. Div. 1993). "However, it is undeniable that American society is also confronted with the problem of

disabled parents who are unable to support themselves, much less their children." Burns, 367 N.J. Super. at 40. Thus, we have held that "the SSA['s] adjudication of disability constitutes a prima facie showing that [a parent] is disabled, and therefore unable to be gainfully employed[.]" Golian v. Golian, 344 N.J. Super. 337, 342-43 (App. Div. 2001). The "burden" then "shifts to [the contesting party] to refute that presumption." Id. at 343.

We have also held that "SSI benefits" received by a disabled parent "cannot be included in the child-support calculus." Burns, 367 N.J. Super. at 45. "The intent of the child-support framework to ensure that parents support their children has no application to those parents whose sole source of income is SSI, and where such parents have no ability to generate any additional income." Id. at 41. See also Crespo, 395 N.J. Super. at 194-95 ("SSI benefits should not be included in the calculation of child support when the disabled parent receives no other income, and no other income can be imputed to him."). Likewise, "[b]enefits received through the SSI program are exempt from attachment, garnishment, levy, execution or any other legal process[,]" including garnishment or attachment for child support purposes. Burns, 367 N.J. Super. at 39. See 42 U.S.C. § 659(a).

However, "a child support order may be entered against a parent who is an SSI recipient where the court concludes that the parent is earning or has the ability to earn additional income." Burns, 367 N.J. Super. at 50. Further, such parents are not exempt from the child support guidelines' "detailed criteria for imputation of income to parents." Id. at 49. Thus, notwithstanding receipt of SSI benefits, "[i]ncome may be imputed to a party who is voluntarily unemployed . . . ." Golian, 344 N.J. Super. at 341 (citing Dorfman v. Dorfman, 315 N.J. Super. 511, 516 (1998)). "[I]n determining whether to impute income, the guidelines instruct that the trial court must first determine whether the parent has just cause to be voluntarily unemployed[,]" and "[i]n making that decision," considerations include "the reason and intent for the voluntary . . . unemployment[,]" as well as the "health of the part[y.]" Caplan v. Caplan, 182 N.J. 250, 268 (2005) (quoting Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A P12 at 2517, www.gannlaw.com (2005)).

The decision to impute income as well as the amount imputed "is a discretionary matter" and is based on the court's evaluation of the party's "capacity to earn and job availability." Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004) (citation omitted). In that way, "the imputation of income

12

to one or both parents who have voluntarily remained . . . unemployed, without just cause, will promote a fair and just allocation of the child support responsibility of the parents." Caplan, 182 N.J. at 268.

Given these principles, contrary to defendant's assertion, we are satisfied the judge correctly applied Burns and Golian. We discern no basis to disturb the judge's decision to impute income to defendant based on the judge's determination that the SSA adjudication demonstrated defendant had the capacity to perform some sedentary work, and defendant failed to present any supporting medical documentation showing he was incapable of earning additional income. Thus, the judge correctly determined defendant was unemployed without just cause. Further, the judge imputed minimum wage to defendant as permitted under the guidelines. See Pressler & Verniero, Appendix IX-A to R. 5:6A P12 at 2516. Additionally, contrary to defendant's contention, a plenary hearing was not required because defendant presented no material factual disputes. See Lepis v. Lepis, 83 N.J. 139, 159 (1980) ("[A] party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary.").

Likewise, the judge correctly exempted defendant's SSI benefits from attachment or garnishment, but permitted other sanctions set forth in Rule 5:7-

5, authorizing Probation, which is responsible for monitoring and enforcing compliance with child support orders, to pursue enforcement actions on the litigant's behalf. See also R. 5:3-7(b) (providing that "[o]n finding that a party has violated . . . [a] child support order the court may, in addition to remedies provided by [Rule] 1:10-3, grant . . . [other] remedies" to ensure compliance, including "suspension of . . . [a] driver's license consistent with law[,]" "economic sanctions[,]" and "incarceration.").

Finally, an award of counsel fees in Family Part actions is permitted by Rule 4:42-9(a)(1), and Rule 5:3-5(c). In Mani v. Mani, 183 N.J. 70 (2005), our Supreme Court summarized the considerations as follows:

> In a nutshell, in awarding counsel fees, the court must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.
>
> [Id. at 94-95 (alterations in original).]

Here, we agree with defendant that nothing in the record shows the judge considered the requisite factors. In fact, the judge made no findings, contrary to Rule 1:7-4(a), mandating, in pertinent part, that "on every motion decided by a written order that is appealable as of right," the court "shall, by an opinion or

14

memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . ." See Gnall v. Gnall, 222 N.J. 414, 428 (2015) ("Failure to make explicit findings and clear statements of reasoning [impedes meaningful appellate review and] 'constitutes a disservice to the litigants, the attorneys and the appellate court'") (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980)). "Naked conclusions do not satisfy the purpose of [Rule] 1:7-4." Curtis, 83 N.J. at 570. Accordingly, we are constrained to reverse the counsel fee award, and remand for the judge to make findings in accordance with Rule 1:7-4(a).

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0344-17T2